STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
WILLIE LEAKS, PLAINTIFF IN ERROR.

Argued October 20, 1939—Decided January 11, 1940.

For the defendant in error, *William A. W. Grier,* prosecutor of the pleas of Salem county.

For the plaintiff in error, *Joseph Narrow.*

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. The plaintiff in error was convicted of murder in the first degree and on August 22d, 1939, was sentenced to death.

Nine assignments of error and specifications of causes for reversal are argued. That which we consider a substantial question is raised in the main by assignments numbered 2, 3 and 8. These therefore will be considered as well as any other matter on this appeal cognate thereto.

Under these assignments there is presented the fact that illicit evidence was admitted at the trial, to wit, testimony that Leaks, the defendant below, had pleaded guilty to the murder when arraigned before a justice of the peace, and it is argued that this was harmful error even though the court, on the day following the reception of this testimony, instructed the jury to disregard it; further, that it was error for the court to deny defendant's motion for a mistrial which was made almost at the end of the entire case and was based in part upon the fact that evidence of such guilty plea, made as aforesaid, had been received.

The plaintiff in error, Willie Leaks, a Negro boy, was found by the jury to have murdered Howard H. Mead, an aged farmer of Upper Pittsgrove township in Salem county. Leaks stopped at the decedent's home either for the purpose of robbing him or, once there, conceived the notion of so doing perhaps after he talked with him. The homicide was done in an outbuilding of the farmhouse known as the "pump shed" with a piece of "well pipe," the decedent having been struck across the head with it; the result was that his skull was fractured in several places. Thereafter Leaks stole the sum of $12 from decedent's purse, which he found in the house.

The evidence, challenged as illegal, was admitted under these circumstances: Samuel McWilliams, Jr., a justice of the peace of the county, testified that he gave defendant a hearing on July 24th, 1939; he produced the complaint on which a warrant for the arrest of Leaks had been issued, and, against objection that same was neither relevant nor material, it was received in evidence; an exception was entered; the witness was then asked if he read the complaint to the defendant and he answered in the affirmative; he was asked how the defendant pleaded and his answer was "his plea was guilty." No objection was offered against this testimony. The trial

not being concluded on that day, the court, on the day following, declared to the jury that the testimony of Mr. McWilliams as to the complaint and the plea which the defendant entered was not proper evidence and that it was not to be conisdered by the jury in "any manner, shape or form" in reaching a verdict. Toward the very end of the whole case defense counsel stated that he "would like to make several motions" at the side bar. What transpired between counsel and the court we have no way of knowing. Presuming, at any rate, some motion was addressed to the court, it next appears that the court said, "by reason of the other statement I made, striking the testimony of Mr. McWilliams, *Exhibit S-9,* the complaint (*i. e.,* that which the justice of the peace produced) will also be withdrawn." Was the admission of this evidence prejudicial error calling for a reversal? Our statute will not tolerate a guilty plea to an indictment for murder. *R. S.* 2:138-3 provides, "In no case shall the plea of guilty be received upon an indictment for murder and if, upon arraignment, such plea shall be offered, it shall be disregarded and the plea of not guilty entered and a jury duly impaneled to try the case in the manner aforesaid." But this statute, by its express language, does not solve the difficulty here. The situation under consideration is different. No plea of guilty was entered at the trial—only evidence that such plea had been stated elsewhere when the accused was arraigned before a justice of the peace. But we cannot rest on bare technique because no plea of guilty was formally received in the trial court. It is equally hostile to the philosophy of our statute to receive proof that a plea of guilty was, as here, entered elsewhere. The statute, in language that is precise and comprehensive, is most convincing on what our public policy is on this issue. To receive a plea of guilty flies in the face of the statute; to receive evidence that such a plea was entered on a preliminary hearing does violence to our public policy as ordained by the statute, *supra,* by ignoring it. *Cf. State* v. *Smith,* 109 *N. J. L.* 532, and cases therein cited.

It requires very little reflection to conclude that if, as a matter of public policy, a plea of guilty on an indictment for

murder may not be entertained by the court and that, if offered, the court is obligated to expunge it and enter a plea of not guilty, that to permit proof that a defendant had pleaded guilty would set at naught the very purpose of the statute. If a plea of guilty in a homicide case is not tolerated, how may evidence that such plea was stated or entered at a preliminary hearing be lawfully admitted? Or if, as a matter of law, a plea of guilty may not be received by what token may it be proved that such plea was offered? *Kercheval* v. *United States,* 274 *U. S.* 220.

It is argued by the state's attorney that the trial judge instructed the jury to disregard this evidence in its entirety and that "there is no proof whatever that this influenced them in the slightest in arriving at the verdict." As to this, who can say whether or not this illicit evidence affected the jury and to what degree? May it not have been all persuasive as long as it was part of the state's case? And after it was struck out, as a matter of record, was it obliterated from the mind of the jury so that the tablet of the mind and recollection was wiped clean? We do not think so. Jurors as a rule are not expected to be skilled in legal distinctions and we are rather inclined to the view that proof of this kind would, unconsciously or subconsciously, be a very substantial element in their consideration, and that it would not be possible for them to subtract this testimony from the total of the evidence and discard it. Yet the accused was entitled to have that done by the jury in the consideration of the case. The state's attorney also says that it was the attorney for the defendant who "injected into the case on two occasions that his client had entered a plea of guilty." Even so, when as a matter of public policy, a plea of guilty may not be offered by the accused, certainly that indefeasible right may not be set at naught by his counsel. Even the accused may not waive his right in this particular. The legislature has so ordained and neither the court, counsel nor accused has any discretion in the matter. The statement of defense counsel should not have been made. The fact that he made it is no justification whatever for receiving the evidence produced by the state that there had been a guilty plea. The gratuitous statements of

counsel in this particular cannot be made to tell against the rights of the accused on this issue. The primary duty of a defense attorney is not necessarily to obtain an acquittal in a criminal case but to see to it that the lawful rights and privileges of the accused are not invaded, *i. e.*, that he not be convicted except on legal evidence and by the due processes of law.

It is true that when the evidence of Mr. McWilliams was offered, that defendant pleaded guilty to murder before him, no objection was interposed and that ordinarily in the consideration of a criminal appeal a matter may not successfully be assigned for error in the absence of an objection and exception on the record. But the rule is otherwise where either jurisdiction or public policy is involved. Such questions will be considered on appeal whether or not they have been raised below. *State* v. *O'Leary,* 110 *N. J. L.* 36; *State* v. *Forman,* 97 *Id.* 168; *State* v. *Belkota,* 95 *Id.* 416. And this, as has been said, is a matter involving public policy. The evidence in question, even though later expunged by the learned trial court, worked a "manifest wrong or injury" upon the accused which our law ordains shall not be visited upon him by the admission of illegal testimony. The instruction of the court in the premises, neither neutralized nor effaced the harm. It is to be preferred that punishment of a wrongdoer be delayed rather than fundamental safeguards, guaranteed by society to the individual, be not regarded. *C. F. Heim* v. *U. S.,* 47 *App. D. C.* 485; *L. R. A.* 1918-E, 87; *People* v. *Ryan,* 82 *Cal.* 617; 23 *Pac. Rep.* 121; 11 *Amer. Crim. Rep.* 253; (compare *State* v. *Carta,* 90 *Conn.* 79; 96 *Atl. Rep.* 411).

The judgment will be reversed. A new trial is ordered.

*For affirmance*—PARKER, CASE, BODINE, DONGES, HETFIELD, DEAR, JJ. 6.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, HEHER, PERSKIE, PORTER, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 9.