[Crim. No. 1163. Fourth Dist. Apr. 24, 1958.]

THE PEOPLE, Respondent, v. GEORGE EDWIN
ANDRUS et al., Appellants.

Samuel Dreizen for Appellants.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

WAITE, J. pro tem.*—The Grand Jury of Orange County returned an indictment charging appellants with five separate offenses. In Count One appellants were charged with violation of section 288 of the Penal Code committed upon Charlotte F. Florance on or about February 18, 1955. Count Two charged the commission of a similar offense upon the same child on or about December 20, 1955. In Count Three appellants were charged with violating Penal Code, section 261, subdivision 1, accomplished with Sarah Lou Andrus on or about February 19, 1955. In Count Four, appellants were charged with incest in violation of Penal Code, section

---

*Assigned by Chairman of Judicial Council.

285, committed with respect to the same person, and on or about the same date as in Count Three. In Count Five appellants were charged with violation of section 702 of the Welfare and Institutions Code.

After motions made in propria persona to set aside the indictment under section 995 of the Penal Code had been denied, appellants pleaded not guilty to the charges and moved to disqualify the superior court judges of Orange County. The court found that neither Judge Shea nor Judge West was disqualified. Appellants then procured counsel and made a motion for change of venue which was denied, but the court granted their motion to set aside their pleas and considered a new motion to dismiss the indictment under Penal Code, section 995. The motion was granted as to Count Five and denied as to the remaining counts, whereupon appellants pleaded not guilty to each of the four counts remaining. After trial before a jury appellants were found guilty as to Counts One and Two and appellant Andrus was found guilty of violation of section 702 of the Welfare and Institutions Code, a lesser offense included within the offense charged in Count Three. Appellant Florance was found not guilty as to Count Three and both appellants were found not guilty as to Count Four.

After the return of the jury's verdicts the court adjourned criminal proceedings for the purpose of determining the question of sexual psychopathy, and after a hearing appellants were found to be sexual psychopaths within the meaning of the Welfare and Institutions Code and were committed to the Patton State Hospital for a period not exceeding 90 days. In subsequent proceedings the court found appellants not to be sexual psychopaths and criminal proceedings were reconvened. Motions for new trial were denied as to each appellant with respect to Counts One and Two. Motion for a new trial of appellant Andrus as to Count Three was granted, and on motion of the district attorney Count Three was dismissed. Probation was denied and both appellants were sentenced to the state prison for the term prescribed by law on Counts One and Two, the terms being ordered to run concurrently. Each appellant has appealed from the judgment of conviction and from a denial of the motion for a new trial, urging several grounds for reversal.

A summary of the facts in the light most favorable to respondent (*People* v. *Caritativo,* 46 Cal.2d 68 [292 P.2d

513] ) shows that Charlotte Florance, daughter of appellant Florance was 13 years of age at the time of the offense alleged in Count One on February 18, 1955, the child having been born January 3, 1942. She lived in Orange with her family until June or July of 1955, at which time the family moved to Buena Park. Charlotte was acquainted with Sarah Lou Andrus, daughter of appellant Andrus, and Sarah Lou had lived in the Florance residence in Orange for a time. During the period when Charlotte was living in Orange she went to Buena Park and spent the night with appellant Andrus, and the following morning discussed the incident with Sarah Lou, who recalled that the conversation took place in February 1955.

Charlotte had become a member of a religious organization of which appellant Andrus was minister and she had asked appellant Andrus for instruction to aid her in understanding sex. Before Charlotte went to spend the night with appellant Andrus she had a conversation with her mother, appellant Florance, who told her that she (Charlotte) was going to do what God wanted her to do and that she would have to do anything that appellant Andrus asked her to do. After arrival at the Buena Park residence Charlotte and appellant Andrus went to bed together. The girl related her problems to appellant Andrus and he talked to her about the body and about life. While they were in bed together appellant Andrus fondled Charlotte on her private parts and on her breasts.

Some time near Christmas 1955, the exact date not being recalled by Charlotte, she went to bed again with appellant Andrus, at which time she told him she was fearful of something which had happened in connection with her sister and that she wanted instruction as to an erection and what it meant for a man to be released. Appellant Andrus again fondled Charlotte on her private parts and had her rub his private parts. Appellant Florance stated in the presence of a deputy sheriff on February 1, 1956, with respect to Counts One and Two, that she was aware of the instruction being given her daughter by appellant Andrus and was aware of the events after they transpired. The evidence shows that on both occasions above related appellant Florance told Charlotte to go with appellant Andrus and do as he requested.

Appellant Andrus admitted going to bed with Charlotte on the occasion in February, 1955, but contended that it was merely a discussion about her problems and that there

was no demonstration. He testified that at no time did he touch Charlotte's private parts nor did he place his hand beneath her nightgown; and that his only intent on that occasion was as a marriage counsellor to help Charlotte and give her instructions on how to solve her problem of fear. As to the offense alleged in Count Two, appellant Andrus denied he was in bed with Charlotte on or about that date and that after the incident on February 18, 1955, he gave her no further instruction before her 14th birthday, which occurred January 3, 1956.

Appellant Florance testified that she had no knowledge of the matters alleged in Count Two and that she was not present at any of the acts alleged in either Count One or Count Two.

Appellants first contend that the district attorney was guilty of prejudicial misconduct in his opening statement, in his interrogation of various witnesses, and in his argument to the jury. In his opening statement the deputy district attorney referred to background association of the appellants in 1954 and we find nothing prejudicial in the statements made. Relevant circumstances in such a case include companionship and conduct on the part of the defendants both before and after the offense and such circumstances might be of value by way of proof as bearing on a plan or on intent (*People* v. *Moore,* 120 Cal.App.2d 303 [260 P.2d 1011]).

Another instance of alleged misconduct occurred when the deputy district attorney stated ". . . and here is a man, a man not her father, and the two of them sleeping in the same bedroom." An objection on the ground that the matter was argumentative in form was sustained by the court and thereby any prejudice was obviated. (*People* v. *Burwell,* 44 Cal.2d 16, 37 [279 P.2d 744].) Both the court and counsel told the jury that the opening statement was not to be considered as evidence, and in the formal instructions to the jury the court again reminded the jurors that any statement by counsel as to the facts must not be regarded as evidence. It is presumed that the jurors followed the instructions of the court. (*People* v. *Sutic,* 41 Cal.2d 483, 494 [261 P.2d 241].)

Appellants urge that further prejudice occurred in statements to the effect that there was a plan on the part of both appellants to commit sex acts on the children and

argued that there was no charge of conspiracy. The presence of a plan may well be a crucial factor in the case of aiding and abetting and a conspiracy may be proved even if not pleaded. (*People* v. *Tanner*, 3 Cal.2d 279 [44 P.2d 324].) It is apparent that no prejudice resulted.

Finally, in connection with the opening statement, it is contended that prejudice resulted when the prosecutor stated that he thought the People would prove the matters with the help of God. The court ordered the latter portion of the statement stricken as being outside the scope of the opening statement, but appellants urge that irreparable damage resulted in view of the fact that appellants were connected with a religious organization. However, the court admonished the jurors to disregard the statement and formally instructed them that they were not to be governed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling.

The fact that some of the remarks in the prosecutor's opening statement were not substantiated or that certain evidence was eventually stricken does not show prejudice in the absence of a showing of bad faith. An opening statement is supposed to be an outline of what the People intend to prove. The failure to do so, either on account of the rules of evidence or for any other reason, does not necessarily indicate prejudice. (*People* v. *Planagan*, 65 Cal.App. 2d 371, 407 [150 P.2d 927].)

The contention of appellants that prejudicial misconduct occurred in the interrogation of certain witnesses is not borne out by the evidence. Without reciting in detail all of the questions asked, it is sufficient to say that the trial court sustained objections where proper and the jury was adequately admonished on each occasion. We find nothing in the conduct of the deputy district attorney which would indicate bad faith and the mere fact that improper questions may have been asked, and objections thereto sustained, does not necessarily result in misconduct. As stated by the court in *People* v. *Hooker*, 130 Cal.App.2d 687 [279 P.2d 784] : "All questions propounded by the deputy and all terms used by him appear to have been used solely to develop the true facts. . . . If his behavior at the bar is free from venom against the accused; if he uses no terms designed solely to create prejudice against the accused; if he persists in an ordinary procedure with the view of presenting only the facts against the prisoner, it cannot be said that his conduct was prejudicial."

It is next contended that the evidence is insufficient to justify the verdict as to both counts on which the appellants were found guilty. Without elaborating on the statement of facts hereinbefore set forth, it is enough to say that the testimony of Charlotte Florance is sufficient to support both counts as to the appellant Andrus, and that the evidence furnished by Charlotte Florance and Sarah Lou Andrus is ample to support the verdicts as to the appellant Florance. In a prosecution for violation of Penal Code, section 288, no corroboration of the victim's testimony is required. (*People* v. *Westek*, 31 Cal.2d 469 [190 P.2d 9]), but in the present case there is corroboration in the testimony of Sarah Lou Andrus and of the deputy sheriff. It is also urged that there is nothing to show any intent to incite the lust or passion of either the appellant Andrus or Charlotte as to Count One, but it is well settled that in a prosecution under the statute here involved, the requisite intent may be found from surrounding circumstances. (*People* v. *Jones*, 42 Cal.2d 219 [266 P.2d 38] ; *People* v. *Hyche*, 52 Cal.App.2d 661 [126 P.2d 885].) In connection with Count Two, it is further contended that the evidence is insufficient to show that the offense occurred prior to Charlotte's 14th birthday in view of the fact that the child indicated uncertainty as to the exact time of the offense. From the evidence here the jury could properly determine that the incident took place around Christmas 1955, prior to Charlotte's 14th birthday (See *People* v. *Crownover*, 34 Cal.App. 2d 7 [92 P.2d 929] ; *People* v. *Haywood*, 131 Cal.App.2d 259 [280 P.2d 180].)

It is next contended that certain testimony of Deputy Sheriff Frank Dean, which was later stricken, was prejudicial. The witness testified to a conversation with the appellant Andrus February 1, 1956, wherein appellant Andrus acknowledged certain conduct with Charlotte on the occasions covered by Counts One and Two. After hearing a recording of said conversation out of the presence of the jury, the court ordered stricken all of the testimony of the witness concerning the conversation of February 1, 1956, on the ground that the statement was a confession and that it did not appear to have been freely and voluntarily made. After the testimony was stricken the court admonished the jury to disregard the testimony entirely because it was not legally admissible. The judge then asked if the admonition was clear to all of the jurors and all replied in the affirmative. The court further instructed the

jury formally that if any evidence was admitted, and later ordered stricken, the jury must disregard entirely the matter so stricken. As stated by the trial judge there was ample evidence, independent of the testimony of Deputy Sheriff Dean, which established the commission of the offenses, and since it is presumed that the jury obeyed the admonition to disregard the stricken matter, no prejudice resulted.· (See *People* v. *Sourisseau*, 62 Cal.App.2d 917 [145 P.2d 916].)

It is next contended by appellants that the court erred in not granting their motion for an advisory verdict of not guilty at the close of the prosecution's case, but in view of the discussion as to the sufficiency of the evidence it is apparent that such instruction was properly refused. When there is evidence from which an inference of guilt is justified, the case will not be taken from the jury because an inference of innocence could also be drawn. (*People* v. *Wescott*, 99 Cal.App.2d 711 [222 P.2d 256].)

 It is next urged that appellants were denied due process of law by being deprived of the right of counsel at all stages of the proceedings, but we find no merit in this contention. On February 14, 1956, appellants were represented by counsel at arraignment. The court granted their motion for a continuance to February 21, 1956, on which date appellants' then counsel stated that a difference of opinion had arisen between himself and his clients which appeared irreconcilable. Appellants acknowledged this to be the fact, whereupon the court granted counsel's motion to withdraw and continued the matter to February 28, 1956, in order to allow appellants time to secure new counsel. On the latter date appellants asked for more time and the court granted another continuance to March 6, 1956, on which date appellants indicated that they had not completed their arrangements for counsel and the court granted a further continuance to March 20, 1956. On that date appellants stated that they had arranged for counsel but needed time within which to obtain a loan for counsel fees. The court granted a continuance to April 3, 1956, stating that appellants must enter their pleas at that time with or without counsel. On April 3, 1956, the appellants being present without counsel, appellant Andrus stated that the counsel they desired was unable to be present but that appellants were willing to proceed with a motion under Penal Code, section 995. As hereinbefore noted the motion was denied but was subsequently entertained again after appellants had secured counsel. Appellants were

represented by their present counsel at all times after May 23, 1956, and the trial did not commence until June 18, 1956, hence there was approximately a month's time for preparation for trial. At all times noted, appellants were at liberty on bail and it is clear that no substantial right was denied with respect to representation by counsel. (*People* v. *Greene*, 108 Cal.App.2d 136, 141 [238 P.2d 616].)

Appellants next complain of alleged errors in rulings of law made by the trial court, contending that the court erred in denying their motion under Penal Code, section 995; in denying their various motions for mistrial; in striking certain testimony; in refusing to strike certain testimony; and in denying their motions for a new trial. Without going into detail on each of these matters, suffice it to say that a careful examination of the voluminous transcript and the lengthy briefs convinces us that no prejudicial error occurred in any of the instances specified. The trial judge was extremely careful to protect the rights of the appellants at all times, constantly reminding the jurors to bear in mind the admonitions of the court in all respects. Some of the instances complained of have previously been considered under the contention of appellants that the district attorney was guilty of misconduct and need not be repeated here.

In connection with the motion for a new trial appellants produced a letter signed "Charlotte Florance" which was to the effect that after thinking the matter over Charlotte could now remember that the second incident occurred after her 14th birthday. As the court said in *People* v. *Tallmadge*, 114 Cal. 427, 430 [46 P. 282]:

". . . It cannot be said that, as a matter of law, a new trial should be granted whenever an important witness against the defendant shall make an affidavit that he committed perjury in his testimony; if that were so, justice would be defeated in many grave cases. Notwithstanding such an affidavit, the appellate court will rest largely upon the discretion of the judge who heard the trial, and will not disturb his ruling except in clear cases of abuse of discretion." See also: *People* v. *Lee*, 9 Cal.App.2d 99, 105-108 [48 P.2d 1003]; *People* v. *Jenkins*, 118 Cal.App. 115, 119 [4 P.2d 799].

No abuse of discretion appears in the case before us.

Finally, it is contended by appellants that the court erred in refusing to give two instructions requested by appellants, in giving an instruction on the court's own motion and in modifying two instructions requested by appellants.

 The two instructions refused were practically identical, one referring to the defendant and to the crime charged against him and the other referring to the defendants and to any crime charged against them. Both instructions were to the effect that the jury could not return a verdict of guilty upon circumstantial evidence alone unless the proved circumstances were not only consistent with the hypothesis of guilt but were irreconcilable with any other rational conclusion. Appellants contend that it was necessary to rely on circumstantial evidence in the determination of intent, but in a case of this nature the direct testimony of the complaining witness as to the acts committed may sufficiently indicate the requisite intent. (*People* v. *Norton,* 141 Cal.App.2d 790 [297 P.2d 439].) The court did instruct the jury, among other things, that when the case which has been made out by the People rests entirely or chiefly on circumstantial evidence and in any case before the jury may find a defendant guilty, basing its findings solely on such evidence, each fact essential to complete a chain of circumstances that will establish the defendants' guilt must be proved beyond reasonable doubt, and that a necessary element in the offenses charged in Counts One and Two, is the existence of the specific intent therein described. The appellants were not prejudiced by the refusal to give the requested instructions since the subject was adequately covered by other instructions.

 There is no merit in appellants' contention that the court erred in giving an instruction on its own motion regarding character evidence. The concluding portion of the instruction given stated that if after weighing all the evidence the jury is convinced beyond a reasonable doubt of the defendant's guilt, it will be the jury's duty to find him guilty notwithstanding testimony that he was or is a person of good character. This is a correct statement of the law. (*People* v. *Navarette,* 21 Cal.App.2d 598 [69 P.2d 449].)

 Further alleged error is predicated upon the court's modification of two defense instructions by adding the words ''subject to my other instructions,'' and it is contended that the effect of adding the qualification was to confuse the jury. Instructions are to be considered in their entirety. (*People* v. *Tolmachoff,* 58 Cal.App.2d 815, 825 [138 P.2d 61]), and the only effect of the modification here was to charge the jury to consider the instructions together. It should be noted that the instructions given included those to the effect that the laws of this state do not prohibit sex instruction; that

it is not a crime in itself for one to instruct another with respect to sex; that if the jury finds from the evidence that the defendant's intent was to give sex instruction and that it was not to arouse, appeal to, or gratify the lust or passion of the defendant or the child, then a violation of Penal Code, section 288, has not been established.

 The one remaining modification complained of was in a defense instruction to the effect that before the jury could find the defendants guilty as to Count Two, the jury must believe beyond a reasonable doubt and to a moral certainty, that Charlotte was under the age of 14 at the time the alleged offense was committed; that if the jury does not so believe, the defendants are not guilty. The remaining portion of the instruction which was stricken by the court is a reminder to the jury that if it can draw two conclusions from the evidence with equal propriety it must adopt the one of innocence and find the defendant not guilty. The stricken portion was given to the jury in another instruction and the court was not required to remind the jury of its duty in this respect in more than one instruction. (*People v. Morlock*, 46 Cal.2d 141, 150 [292 P.2d 897].)

Upon consideration of the entire record in accordance with article VI of section 4½ of the California Constitution, we conclude that appellants had a fair and impartial hearing, that no prejudicial error appears and that there has been no miscarriage of justice requiring a reversal of the judgment.

The judgment and the order denying the motion for a new trial are affirmed as to each appellant.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied May 19, 1958, and appellants' petition for a hearing by the Supreme Court was denied June 17, 1958.