TEMPLE ET AL. *v.* STATE OF INDIANA.

[No. 30,288.   Filed February 6, 1964.]

Richard M. Orr, and Money, Orr, Bridwell & Fink, of Indianapolis, for appellants.

Edwin K. Steers, Attorney General, and David S. Wedding, Deputy Attorney General, for appellee.

ACHOR, J.—Appellants were tried and convicted by a jury for the crime of armed robbery and sentenced to 10 years' imprisonment in the Indiana state reformatory.

Appellants here argue five grounds for reversal. The first four deal with the admission of evidence and alleged misconduct on the part of the prosecuting attorney. The last asserted error is that the verdict was not sustained by sufficient evidence.

Because the prejudicial effect, if any, of all other asserted errors must, in this case, be considered in the light of the evidence in support of the conviction, we consider first the conclusive nature of the evidence herein. Thereafter, we consider the other asserted errors, for the purpose of determining whether or not they were, in fact, prejudicial to the appellants.

Notwithstanding appellants' arguments that the evidence is insufficient to sustain the verdict, we are, in

fact, confronted by a unique circumstance where the evidence as to the guilt of each of the appellants was not only (1) established beyond a reasonable doubt by the testimony of several witnesses [some of whom were present at the scene of the robbery and others to whom appellant Pinkerton admitted having committed the crime], but (2) was also without conflict or contradiction.[1]

Under such circumstances, even though there may have been error in the course of the trial with regard to the admission of such evidence or the conduct of the prosecutor, such error will be considered harmless, unless it appears that the asserted error was, in some way, prejudicial to the accused. See: *Rickman* v. *State; Lawrence* v. *State* (1952), 230 Ind. 262, 103 N. E. 2d 207; *Hedrick* v. *State* (1951), 229 Ind. 381, 98 N. E. 2d 906; *Wolfe* v. *State* (1929), 200 Ind. 557, 159 N. E. 345; *The People* v. *Pelkola* (1960), 19 Ill. 2d 156, 166 N. E. 2d 54; *Flandell* v. *State* (1944), 31 Ala. App. 520, 19 So. 2d 401; 5A C. J. S., Appeal & Error, §1724, p. 923; 3 Am. Jur. 576, §1026; 5 Wharton, Criminal Law and Procedure, §2255 (12th ed. 1957); Ewbanks Indiana Criminal Law, §552, p. 366; F., W. & H. Ind. Tr. & App. Pract., §2785, p. 365; Acts 1905, ch. 169, §334, p. 584, being §9-2320, Burns' 1956 Repl.

We, therefore, next consider the other asserted errors to determine whether, under the circumstances of this case, they were so prejudicial as to constitute reversible error. All such asserted errors arose in connection with the interrogation of the first witness in the

---

1. With regard to the appellant Temple, neither in their brief nor in oral argument has counsel argued that the evidence was not sufficient as to this appellant. Therefore, under Rule 2-17(e) and (f) of this court, any issue as to the sufficiency of the evidence to sustain his conviction is waived.

case, one Thomas Sullivan, a part-owner and bartender of the tavern which was robbed by appellants. His testimony and the events occurring during his interrogation, which are alleged to constitute error, are as follows:

About 11:00 a. m., November 10, 1960, a man came in the front door of the tavern, his face disguised. At about the same time another man wearing a stocking over his face, a trench coat and gloves, and carrying a gun, came in the back door. While the first man, who Sullivan identified as Temple, held a gun on him and the rest of the customers, the other man, later identified by other witnesses as Pinkerton, came up and took the money out of the cash register, which contained about $2,175.00. The two men then shoved the witnesses into the women's rest room, put the juke box against the door, and fled.

Witness Sullivan and the customers stayed in the rest room "about five seconds" after they heard the door slam, then Sullivan ran behind the bar, got another gun, "commandeered" a car, and followed a truck which was seen pulling away from the back door. He saw that the men in the truck were not the men who had committed the robbery, so he came back to the tavern. When he arrived, Gene Marshall, one of the customers present at the time of the robbery [who, at the time of the trial, was somewhere in Louisiana], was bringing in a man whom Sullivan described as about the "same build" as the robber who had worn a stocking over his face, trench coat, and gloves.

The prosecutor then asked the witness: "What then happened?" to which question counsel for appellants objected on two grounds; first, that the question called for a narrative answer, which deprived the appellants of the right to object to specific questions on a question and answer basis; and, secondly, because

the question related to a matter subsequent to the commission of the crime and was therefore not properly a part of the case in chief, "being beyond the res gestae and corpus delicti." The objection was overruled, and the witness then stated that Marshall brought in Pinkerton [whom Sullivan later admitted that he could not positively identify] and laid him on the floor, whereupon the witness Sullivan pointed a gun at him and told him he would give him three seconds to tell him where the coat with the money was, whereupon the man [later identified positively by another witness as Pinkerton] stated that the coat was out in the street.

Thereafter counsel for appellants moved the court to suppress all the testimony of witness Sullivan as to events which occurred after the alleged robbers left the tavern. The court, after having the question and answer reread, overruled the motion. However, he admonished the jury "to disregard the answer of Mr. Sullivan regarding any statement made by Mr. Pinkerton at the point of a gun or [regarding] any coat obtained as the result of this admission." And the court further admonished the jury to disregard all testimony of the witness as to the co-defendant Temple. Appellants then moved that the submission of the case be withdrawn from the jury, for the reason that the objectionable testimony had been further reemphasized and implanted in the minds of the jury so that its prejudicial effect could not be erased. The motion was overruled.

Witness Sullivan was then asked if he could point out the man who was "brought back" into the tavern by Gene Marshall, to which he replied in the affirmative. Appellants objected to the use of the term "brought back" because it implied that the person to whom it referred was one of the robbers, which fact had not

been proved. The objection was sustained. However, the prosecuting attorney argued that it was in the record that the person was "brought back" into the tavern. The objection was again sustained. Appellants moved that "the jury be admonished to disregard the prosecutor's improper statement concerning the state of the record." The court admonished the jury to disregard the question, as asked.

The witness then identified State's Exhibit No. 5, and stated that it was the stocking which appellant Pinkerton had over his head when he came into the tavern. He identified Exhibit No. 6 as being the coat he had on; Exhibit 7 as the gun appellant had in his left hand; No. 8 as the gloves he wore, and 9 as the ball of tape the appellants used in tying up the customers. These exhibits were then offered in evidence.

Thereafter counsel for appellants asked permission to ask preliminary questions outside the presence of the jury, for the purpose of making objections to the exhibits. The motion was denied. Counsel thereafter, in the presence of the jury, asked if State's Exhibit No. 6 was the coat obtained as the result of threats, which question was objected to by the state, and the objection was sustained. Counsel then objected to the admission of all the State's Exhibits on the ground that, if the defendants would be allowed to ask preliminary questions, it would become apparent that each of the exhibits was obtained as a result of "illegal threats." The objection was overruled and the exhibits were admitted into evidence.

Later in the trial, the prosecuting attorney twice requested that appellant Pinkerton be required to put on the coat, identified as Exhibit 6, for the purpose of identifying the appellant. Objection by counsel for appellants was, in each instance, sustained.

We now consider appellants' contention that, by allowing witness Sullivan to answer the question "What then happened?" in narrative form, constituted reversible error. However, this court has held that the manner in which a witness gives his testimony, whether in narrative form or by question and answer, is primarily within the sound discretion of the trial court. *Brown* v. *State* (1939), 216 Ind. 106, 23 N. E. 2d 267; 58 Am. Jur. 309, §555. In any event, there was no prejudicial error in this instance because, after the answer had been given, it was ordered stricken by the court and the jury was told to disregard it.

Appellant's next major contention is that it was error to permit testimony as to a statement made by appellant Pinkerton "at a point of a gun," relative to the whereabouts of the coat, and, further, that, under existing circumstances, it was error not to withdraw the case from the jury. The theory under which appellants assert this contention is not clear, but, presumably, appellants are contending that the evidence was inadmissible since it was obtained by an *illegally coerced confession*.

The admission of appellant Pinkerton's statement, regarding which the witness testified, was not irreparably prejudicial to appellants for several reasons, two of which are as follows. First, we cannot say that the statement was made as a result of "illegal coercion," not properly a part of the res gestae. In fact, the evidence permits the inference that there was no break in the events which involved the robbery of the witness' property at the point of a gun and his attempt to recover his property with the use of like force upon the person whom he believed to be, and later was proved to be, the robber. These events occurred at the scene of the robbery, before the robber

had succeeded in effecting an escape, and before any peace officers arrived on the scene.

Furthermore, as heretofore noted, the court sustained the objection to the question and admonished the jury to disregard the answer of Mr. Sullivan regarding any statement made by Mr. Pinkerton at the point of a gun, or [regarding] any coat obtained as a result of this admission. On this subject this court has said:

" . . . 'Where improper evidence has been admitted over objection and the trial court subsequently withdraws such evidence from the consideration of the jury, it will be presumed that the error has been cured, unless the contrary is made to appear.' *Ross* v. *State* (1933), 204 Ind. 281, 296, 182 N. E. 865, 870. . . . " *Warren* v. *State* (1941), 218 Ind. 378, 380, 33 N. E. 2d 105.

Appellants also assert that the court erred in refusing to allow appellants an opportunity to ask preliminary questions, out of the presence of the jury, as to whether the coat, identified as Exhibit No. 6, was the one obtained as the result of threats upon appellant Pinkerton. The ruling of the trial court upon this proposition did not constitute reversible error. The court had already told the jury to disregard the testimony of witness Sullivan as to any statement made by appellant Pinkerton regarding the coat, thus presumably erasing the only evidence that might have, as a result of the alleged illegal coerced statement, tied this appellant to the coat.

However, assuming *arguendo*, that the statement was made as a part of an illegally obtained confession, this court, commenting regarding the admissibility of material evidence where information regarding it is obtained under similar circumstances, has stated:

"Appellant contends that error was committed in refusing to strike out the evidence of three police officers, assigned under separate specifications numbered (12), (21), and (22), claiming the denial of due process of law, for the reason that the finding of the gun by the witnesses was based on and accomplished through a written confession obtained unlawfully. See *Watts* v. *State* (1949), 338 U. S. 49, 69 S. Ct. 1347, 93 L. Ed. 1801. Each of these officers testified, in substance, that appellant, on the morning of November 18, 1947, directed them to a vacant lot in the 400 block of West Kansas Street, in the City of Indianapolis, where a shotgun was found, which was exhibited to the jury as State's Exhibit 31. It is to be noted that in the last-cited case, under footnote 2, the United States Supreme Court, in discussing the gun, said (p. 50 of 338 U. S., p. 1348 of 69 S. Ct., p. 1804 of 93 L. Ed.) :

" 'In the petitioner's statements there was acknowledgment of the possession of an incriminating gun, the existence of which the police independently established. But a coerced confession is inadmissible under the Due Process Clause even though statements in it may be independently established as true.'

"In the case before us no evidence was introduced as to any confession, and there is no confession in the record before this court. The fact that the shotgun was found by direction of appellant was not in itself a confession of guilt, nor could it, by itself, establish appellant's guilt. The existence of the gun had to be, and was, independently established by the State. See *State* v. *Turner* (1910), 82 Kan. 787, 109 Pac. 654, 32 L. R. A. 772; 2 Wharton *Criminal Evidence* (10th Ed.), §678, pp. 1398, 1399; 3 Wigmore, *Evidence* (3rd Ed.), §859, p. 342; and 22 C. J. S., Criminal Law, §831, p. 1454." *Watts* v. *State* (1950), 229 Ind. 80, 110-111, 95 N. E. 2d 570.

"Although an involuntary confession is inadmissible in toto, a part of the confession which discloses incriminating evidence independently established as true may be admissible, and facts discovered in consequence of the inadmissible con-

fession may be proved, if relevant." 23 C. J. S., Criminal Law, §831, p. 233.

In the case at bar the exhibits were identified by Sullivan independently of Pinkerton's statement.

Next, we consider appellants' contention that the court committed reversible error in failing to admonish the prosecuting attorney for the following misconduct: (1) In twice asking appellant Pinkerton to put on a coat [State's Exhibit No. 6] and exhibit himself in front of the jury and the robbery victim, who was then a witness, for the purpose of aiding him in the indentification of Pinkerton; and (2) for "repeatedly" alluding to the fact that appellant [Pinkerton] "was brought back in" the tavern after the robbery, thereby implying, without first proving, that this appellant was there at the time of the robbery.

However, the record does not support appellant's contention. Although the prosecutor twice asked that Pinkerton be required to stand and put the coat on for the purpose of identification, the court, in each instance, sustained appellants' objections. Furthermore, as previously noted, Pinkerton was positively identified—without conflict or contradiction—as one of the robbers. Thus, there is nothing in the conduct of the prosecuting attorney upon which appellants can predicate reversible error.

Appellants have cited the case of *Appelby* v. *State* (1943), 221 Ind. 544, 48 N. E. 2d 533, as supporting the contention above considered. However, we are unable to ascertain in what manner it is either persuasive or controlling of this issue.

With regard to the erroneous use by the prosecutor of the phrase "brought back" and of his insistence that

the phrase had previously been used in evidence by the witness, we are unable to say that such conduct constitutes reversible error under the facts of this case. Such error is presumed to have been cured when the court sustained appellants' objection to the question which contained the prosecutor's improper statement, struck the same from the record, and admonished the jury, stating, "the court has ruled that the question as asked . . . is immaterial at this time." *Epps* v. *State* (1885), 102 Ind. 539, 1 N. E. 491. Further, it was later established by the uncontradicted testimony of another witness that the appellant Pinkerton was, in fact, the person "brought back" into the tavern, although the fact had not been established at that time. The prosecutor's conduct, although in error, did not influence the outcome of the case and, therefore, was not reversible error.

The appellants, in support of their contention with regard to this asserted error, have cited and relied upon the cases of *Adler* v. *State* (1961), 242 Ind. 9, 175 N. E. 2d 358; *Rohlfing* v. *State* (1952), 230 Ind. 236, 102 N. E. 2d 199, and *Kelley* v. *State* (1936), 210 Ind. 380, 3 N. E. 2d 65. However, these cases are not in point. In *Adler* v. *State, supra,* the court *failed* to sustain defendant's objection to alleged improper remarks of the prosecutor. In *Rohlfing* v. *State, supra,* the facts had to do with inadmissible evidence, paraded in front of the jury *after* the court had sustained appellant's objection and motion to have it suppressed from the jury's view. Furthermore, it did not appear in that case that the conviction was sustained by positive and uncontradicted evidence. The acts of misconduct in *Kelley* v. *State, supra,* were more numerous, were more flagrant, and were clearly prejudicial to the appellant. Thus, that case is distinguishable from the case at bar.

Since the guilt of the appellants was established by positive and uncontradicted evidence, and the other matters asserted by appellants did not under the circumstances constitute reversible error, judgment is affirmed.

Judgment affirmed.

Landis, C. J., Arterburn and Myers, JJ., concur. Jackson, J., dissents, without opinion.

NOTE.—Reported in 195 N. E. 2d 850.