[Crim. No. 7835.   In Bank.   June 25, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT EARL MATTESON, Defendant and Appellant.

Robert Earl Matteson, in pro. per., and Kate Whyner, under appointment by the Supreme Court, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

TRAYNOR, J.—Defendant appeals from a judgment of conviction entered on a jury verdict finding him guilty of four counts of forgery. (Pen. Code, § 470.)

Defendant, an employee of the O. K. Roof Sales and Service Corporation, was named as the payee on two payroll checks of the corporation. Ray Parmerter, who was not an employee, was named as the payee on two other such checks, one of which was endorsed to defendant. Officers of the corporation authorized to sign checks testified that they had not signed the checks or authorized anyone else to sign them and that the checks were missing from the corporation's checkbook. Witnesses who cashed the checks identified defendant as the person who presented three of them and as accompanying Parmerter when he presented the fourth. According to a police handwriting expert, defendant's endorsements, the amounts, dates, and drawer's signatures, and three of the payees' names were written by the same person. The expert also testified that all of this writing matched a handwriting exemplar made by defendant for the police.

Officer C. W. Rogers of the Los Angeles Police Department interrogated defendant after his arrest. The officer testified that defendant claimed that he found the checks in his automobile completely made out and that he freely and voluntarily admitted that he endorsed three of them and knew that they "were not any good" when he endorsed and cashed them. After this interview, Officer Rogers took defendant to another room to make the handwriting exemplar relied upon by the police expert. No objection was made to Officer

Rogers' testimony, but on cross-examination, he testified that before defendant made the statement and the exemplar, defendant and Officer Rogers' partner, Officer Ernest Eldridge, left the room for a short time. Upon their return, Officer Rogers asked defendant if Officer Eldridge had hit him; defendant replied affirmatively, but said that "he didn't hit very hard."

Defendant testified that he was taken from his cell by Officer Rogers and Officer Eldridge for interrogation. When he repeatedly refused to make a handwriting exemplar until he had seen counsel, Officer Eldridge kicked him in the shins and pulled his hair. Officer Eldridge then took him into a side room and struck him in the midsection with sufficient force to knock him into a chair. While continuing to demand that defendant make a handwriting exemplar, Officer Eldridge struck him several more times in the midsection and asked if he would like "the rubber hose treatment." Defendant then "decided to avoid any further punishment or abuse at his hands or some other officer's hands that I would make this handwriting exemplar and carry on this conversation." He returned to Officer Rogers' desk, made the statement that he knew the checks "were not any good" when he endorsed and cashed them, and went alone with Officer Rogers to another room to make the exemplar.

A cell mate corroborated defendant's testimony that defendant's right midsection was bruised and discolored the morning after the interrogation. Officer Rogers testified in rebuttal that he was occupied with papers when Officer Eldridge first tried to get defendant's exemplar and saw no kicking or hair pulling, that defendant and Officer Eldridge were gone for only two or three minutes, that defendant did not appear to be in pain when they returned, and that he did not appear to be frightened when he made his statement and exemplar. Officer Rogers also stated that Officer Eldridge was on vacation and not available to testify.

After this testimony, defense counsel moved to strike Officer Rogers' testimony concerning defendant's statement on the ground that it was involuntary. The trial judge granted the motion and instructed the jury to disregard "the oral conversation that relates to the guilt or innocence, or any knowledge that pertains to the guilt or innocence ..." of defendant. The court overruled a similar objection to the handwriting exemplar on the grounds that a handwriting exemplar is not testimonial evidence within the privilege

against self-incrimination and that defendant was no longer under duress or compulsion when he made the exemplar.

The court erred in admitting the exemplar and the expert testimony based thereon. The conclusion that the exemplar was not made under duress is not consistent with the uncontradicted evidence and the court's finding regarding defendant's statement. (See *People* v. *Underwood, ante,* pp. 113, 120-121 [37 Cal.Rptr. 313, 389 P.2d 937]; *People* v. *Trout,* 54 Cal.2d 576, 583 [6 Cal.Rptr. 759, 354 P.2d 231, 80 A.L.R.2d 1418]; *People* v. *Berve,* 51 Cal.2d 286, 290 [332 P.2d 97].) The court ruled that defendant's statement was coerced by the brutal treatment by Officer Eldridge. Defendant made the exemplar immediately after his statement under threat of the same coercion. Officer Eldridge demanded only a handwriting exemplar and inflicted the punishment to get it. Although Officer Eldridge was no longer present when defendant made the exemplar, the coercion that induced the statement also induced the exemplar.

Evidence obtained by the state from a defendant by brutality is not admissible against him. (*Rochin* v. *State of California,* 342 U.S. 165, 173 [72 S.Ct. 205, 96 L.Ed. 183, 190-191, 25 A.L.R.2d 1396, 1403].) It is irrelevant that a handwriting exemplar does not fall within the privilege against self-incrimination; the rule of the *Rochin* case is a rule of exclusion, and the fact that the evidence does not fall within other exclusionary rules does not save it.

Whether the admission of the exemplar was harmless error (see *People* v. *Parham,* 60 Cal.2d 378, 386 [33 Cal. Rptr. 497, 384 P.2d 1001]) need not be considered, for defendant's conviction must be reversed because of the introduction of his involuntary statement. The introduction of an involuntary confession or admission requires reversal of a judgment of conviction despite defendant's failure to object to its introduction (*People* v. *Underwood, supra, ante,* pp. 113, 120, 126; *People* v. *Millum,* 42 Cal.2d 524, 526-527 [267 P.2d 1039]) and regardless of other evidence of guilt (*People* v. *Brommel,* 56 Cal.2d 629, 634 [15 Cal.Rptr. 909, 364 P.2d 845]; *People* v. *Trout, supra,* 54 Cal.2d 576, 585).

This defect in the trial was not cured by the court's striking the evidence and admonishing the jury to disregard it. Ordinarily the admission of incompetent evidence cannot be cured by striking it and instructing the jury to disregard it when it goes to a main issue of the case and when other

evidence of guilt is not clear and convincing. (*People* v. *Hardy,* 33 Cal.2d 52, 61-62 [198 P.2d 865]; *People* v. *Roof,* 216 Cal.App.2d 222, 226-227 [30 Cal.Rptr. 619].) In cases involving involuntary statements of the accused, however, the weight of other evidence of guilt is not considered. Incriminating statements from defendant's own tongue are most persuasive evidence of his guilt, and the part they play in securing a conviction cannot be determined. (See *People* v. *Parham, supra,* 60 Cal.2d 378, 385.) For the same reason, an admonition or an instruction to the jury to disregard involuntary incriminating statements does not cure the erroneous admission of such statements. (See *Jones* v. *State,* 184 Wis. 50, 54 [198 N.W. 598]; *Ward* v. *State,* 117 Miss. 847, 853 [78 So. 782]; cf. *People* v. *Hardy, supra,* 33 Cal.2d 52, 61-62; *Oliver* v. *United States,* 202 F.2d 521, 523; *People* v. *Street,* 288 Mich. 406, 409 [284 N.W. 926]; *State* v. *Leaks,* 124 N.J.L. 261, 264 [10 A.2d 281]. But see *Temple* v. *State,* 245 Ind. — [195 N.E.2d 850, 853-854]; *Harris* v. *State* (Tex. Crim. App.) 375 S.W.2d 310, 311; cf. *Goldsmith* v. *United States,* 277 F.2d 335, 342 (semble); *State* v. *Robinson,* 238 S.C. 140, 165 [119 S.E.2d 671].) The offense charged against defendant is committed by presenting for payment a check known to be false or forged with intent to defraud. (E.g., *People* v. *Smith,* 103 Cal. 563, 565 [37 P. 516]; *People* v. *Jones,* 210 Cal.App.2d 805, 807 [27 Cal.Rptr. 35]; *People* v. *Chapman,* 156 Cal.App.2d 151, 156 [319 P.2d 8].) He admitted under coercion that he knew that the checks were no good when he endorsed and cashed them. It cannot be presumed that the jurors could erase such relevant and strongly probative evidence from their minds.

Insofar as they are inconsistent with this opinion, *People* v. *Mayen,* 188 Cal. 237, 256-257 [205 P. 435, 24 A.L.R. 1383], and *People* v. *Andrus,* 159 Cal.App.2d 673, 681-682 [324 P.2d 617], are overruled and disapproved.

The judgment is reversed.

Gibson, C. J., Peters, J., Tobriner, J., and Peek, J., concurred.

Schauer, J., concurred in the judgment.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Mr. Justice Files in the opinion prepared by him for the District Court of Appeal in *People* v. *Matteson* (Cal.App.) 36 Cal.Rptr. 373.