[Crim. No. 6780. In Bank. Sept. 21, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. PHILLIP HENRY BROMMEL, Defendant and Appellant.

Samuel Hurwitz for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Ernest E. Sanchez, Deputy Attorney General, Kenneth Williams, District Attorney, and DeWitt C. Chatterton, Chief Trial Deputy District Attorney, for Plaintiff and Respondent.

DOOLING, J.—Defendant was indicted for the murder of his infant daughter, Debra Jean Brommel, 23 months old. A jury found him guilty of murder of the second degree, and he has appealed from the judgment entered upon the verdict and from the order denying his motion for a new trial.

It was conceded that Debra died as the result of a massive subdural hemorrhage brought on by some severe blow or blows which fractured her skull. The fatal injury occurred in the evening of December 27, 1958, when Debra was in the immediate and exclusive physical care of defendant in their home. It was the theory of the defense that Debra accidentally fell backward out of a chair, striking and injuring her head on the carpeted floor. She was taken to the hospital, where a neuro-surgeon unsuccessfully performed a brain operation on her, and she died about 7 a. m. the next morning, December 28. The autopsy revealed numerous bruises, abrasions and injuries about her head, face and body. It was the theory of the prosecution, based primarily on defendant's confessions and extrajudicial admissions, that defendant intentionally struck Debra with his fists while she was in his care the night before her death, that he had on other occasions struck and mistreated the child, and that his persistent abuse rested on an underlying resentment of the child stemming from the child's birth out of wedlock, which purportedly forced defendant to marry Debra's mother.

As principal grounds for reversal, defendant argues: (1) the prejudicial error of the court's refusal of his demand for a pretrial inspection of three tape recordings of his alleged admissions and confessions and (2) the error of the trial court's conditional submission of the so-called confessions to the jury after concluding that defendant's statements were voluntary in character. Defendant also raises various points concerning rulings on the admissibility of evidence, the propriety of the instructions, and misconduct of the jurors and prosecuting counsel. Since we have concluded that the confessions were involuntary and should not have been admitted, the court's refusal of the pretrial inspection and many of the other claimed errors need not be discussed.

Defendant and his wife were arrested about 11 a. m. on December 28, 1957. They were taken to the police station and held in separate rooms. Defendant underwent extensive questioning by police officers operating in teams of two to five in number; the questioning commenced about 2:30 p. m. the day of his arrest and continued some six hours, interrupted

by short intermittent breaks at various times and a brief interlude of conversations with his wife about 6 p. m. Later in the evening defendant was taken to the county jail where he was interviewed for about an hour by a psychiatrist, Dr. Geddes. Most of defendant's conversations with the officers as well as his conversation with his wife were tape recorded.

While counsel for defendant urges numerous grounds which he argues rendered the confessions of defendant involuntary, we find it necessary to discuss only one of them. The cases in this court are clear from the earliest time that any promise made by an officer or person in authority, express or clearly implied, of leniency or advantage for the accused, if it is a motivating cause of the confession, is sufficient to invalidate the confession and to make it involuntary and inadmissible as a matter of law. (*People* v. *Johnson,* 41 Cal. 452, 454, "if they would come in and confess that it would be lighter with them"; *People* v. *Barric,* 49 Cal. 342, 344-345, "it would be better for him to make a full disclosure"; *People* v. *Thompson,* 84 Cal. 598, 605-606 [24 P. 384], "it would be better for him to tell what he knew"; *People* v. *Gonzales,* 136 Cal. 666, 668 [69 P. 487], "the sheriff would do whatever he could for him, and . . . 'that he had better come out and tell the truth' "; see also *People* v. *Loper,* 159 Cal. 6, 15-18 [112 P. 720, Ann.Cas. 1912B 1193]; *People* v. *Leavitt,* 100 Cal. App. 93, 94-95 [279 P. 1056].) It is now settled that the same test must be applied to all incriminating statements whether they be confessions in the strict sense or only admissions. (*People* v. *Atchley,* 53 Cal.2d 160, 169-170 [346 P.2d 764].)[1] While in many, if not most, cases involving the question of the voluntariness of a confession, the evidence is in conflict as to whether threats or promises were made or not, we are not confronted with such a conflict here since the tape recording of the first interrogation is in evidence and it has also been transcribed in the transcript. We are satisfied from a reading of the transcript of that recording that under the authority of the cases hereinabove cited the confessions must be held to have been involuntary, and that it was therefore prejudicial error for the court to have admitted them.

---

[1]The court erroneously instructed the jury that an admission which did not amount to a confession might be considered by the jury even though involuntarily made. (*People* v. *Trout,* 54 Cal.2d 576, 586 [6 Cal. Rptr. 759, 354 P.2d 231].) The effect of this error need not be considered in view of our conclusion that all of defendant's incriminating statements were improperly admitted because involuntary.

At the first interrogation, despite various types of vigorous urging and suggestions from the officers that they knew that defendant had severely beaten his daughter and wanted him to acknowledge that fact, the defendant persistently and consistently insisted that he had never beaten or struck the child with his fists, although he admitted at times punishing her by slapping and shaking her. There is no need to detail the course of this interrogation further than to reiterate that in the face of a vigorous and pressing interrogation that extends over more than 40 pages of the transcript defendant never once wavered from his denial that he had, on the night before or at any other time, struck with his fist or otherwise beaten or severely mistreated his child. Thereupon, quoting from the transcript of the tape recording, one of the officers, after stating that defendant had been telling a lot of lies and was not fooling them, continued: "You either take it the hard way or you take it the easy way.

"Now, the hard way is that I am going to get up and walk out of this room and put you before a jury of twelve good and true people, and I am going to bring in a number of medical doctors, a great number of medical doctors, and I am going to bring in the grandparents of that child, and I am going to bring in some of your neighbors, and we are going to put them on the witness stand and swear them in to tell the truth, and they are going to tell everything they know about you, all about your violent temper, about the number of times that you have beat that child, and then the judge is going to pass sentence on you, and before you walk up to that judge to find out what is going to happen to you, he is going to want to know your ability to tell the truth.

"We have a little paper down here that wants to know how your ability is to tell the truth, whether you sit down and told the truth about it, or whether you lied about it, and if we write across there that this person would not tell the truth, on many opportunities, we gave him the chance to tell the truth, but he absolutely refused to tell any truth about it at all—in other words, if we just wrote one word across there, Liar, that would—you can go up before that judge and you can ask him for all the breaks in the world, and he is not going to believe you because when a man tells a lie, then even the truth becomes a lie because he is branded as a liar.

"Now if you want to meet that judge that way, if you want to meet your maker that way, well, brother, that is up to you."

The latter part of this statement was both a threat,

that unless defendant told the officers what they wanted and were insisting that he tell them they would write "Liar" on the statement and that defendant could then expect no leniency from the court; and an implied promise, that if defendant told the officers the story that they were insisting that he tell them they would not write "Liar" on the document and defendant might expect a "break" from the court.

We said in the recent case of *People* v. *Trout*, 54 Cal.2d 576, 585 [6 Cal.Rptr. 759, 354 P.2d 231]: "Whether or not there were express threats or promises making Mrs. Trout's release from custody depended upon defendant's confessing to the crimes, the undisputed facts . . . show that such a threat or promise to defendant was implied." It is equally true in this case that whether or not there were express threats that defendant could expect no leniency from the court unless he confessed or promises that he might expect leniency if he did, the statement of the officer above quoted shows that such a threat and promise to defendant was at least clearly and unmistakably implied.

It was only after the quoted statements were made to defendant that for the first time he began to admit to any guilty conduct, and even then he refused to sign a confession. (See *People* v. *Trout, supra,* 54 Cal.2d at p. 585.) ▮ The subsequent confessions and admissions followed almost immediately in time upon the first, and there was no showing that the inducement for the first confession did not continue to act upon defendant. The presumption is that the improper influence continues to act and that the subsequent confessions were the result of the same influence, and hence likewise involuntary and inadmissible. (*People* v. *Jones,* 24 Cal.2d 601, 609 [150 P.2d 801].)

▮ Apart from his confessions the case against defendant was wholly circumstantial, but however strong the case otherwise the admission of involuntary confessions compels a reversal, and section 4½, article VI, of the Constitution can under no circumstances save the judgment. (*People* v. *Trout, supra,* 54 Cal.2d at p. 585; *Rogers* v. *Richmond,* 365 U.S. 534 [81 S.Ct. 735, 739-740, 5 L.Ed.2d 760].)

▮ Over defendant's objection, the court admitted evidence relating to numerous burns on Debra's legs sustained on October 24, 1957 (more than two months before the child's death) and numerous bruises subsequently suffered by the child on her face and body as the result of defendant's acts of once striking Debra with a hot spatula, or pushing her

face into her own fecal matter and then scrubbing her face with a bath brush until it was bruised black and blue, and of several times striking her with his fists. Defendant denied any acts of mistreatment. Defendant analogizes this evidence to the rule stated in *People* v. *Albertson,* 23 Cal.2d 550, 576 [145 P.2d 7], that a defendant can only be tried for the offense with which he is charged and "evidence of collateral independent crimes is not admissible"; and therefore evidence of other misconduct of which defendant may have been guilty in his treatment of Debra was not admissible. The case against defendant depended upon circumstantial evidence and the challenged evidence falls within the exception to the rule allowing its admission as material to show motive, intent, and the general scheme of defendant's continued course of conduct. (*People* v. *Sykes,* 44 Cal.2d 166, 170 [280 P.2d 769]; *People* v. *Dabb,* 32 Cal.2d 491, 500 [197 P.2d 1]; *People* v. *Peete,* 28 Cal.2d 306, 315 [169 P.2d 924].)

Over defendant's objection, the court admitted in evidence 18 of the 27 colored slides, autopsy photographs, produced by the prosecution and deemed necessary by the doctors in explaining and demonstrating their testimony. The pictures were of the face, neck and torso of the child, showing certain aspects of the injuries to her skull, various burns, bruises, and discolorations, and the condition of some of her internal organs. Defendant objected to the autopsy photographs on the ground that they were gruesome, shocking and unnecessarily inflammatory—particularly those pictures showing the child's head completely shaved with a large incision made in the surgical procedure followed for removal of the subdural hematoma.

Defendant contends that the doctors did not find it necessary to use the slides for their testimony at the preliminary hearing and they should not be required at the trial. However, the rule relating to the quantum and character of the evidence required for a preliminary hearing as compared with the final trial are different in scope. The prosecution relies on the general rule that while "it is error to receive in evidence gruesome photographs of a homicide victim designed primarily to arouse the passions of the jury [citations], such photographs are admissible when they are relevant to the issues before the court and their probative value is not outweighed by the danger of prejudice to the defendant. [Citation.] Whether the probative value of a particular photograph outweighs its possible prejudicial effect is a question to be resolved

by the trial court in the exercise of its judicial discretion.'' (*People* v. *Cheary,* 48 Cal.2d 301, 312 [309 P.2d 431] ; *People* v. *Toth,* 182 Cal.App.2d 819, 826 [6 Cal.Rptr. 372] ; see also *People* v. *Love,* 53 Cal.2d 843, 852 [350 P.2d 705] ; *People* v. *Atchley, supra,* 53 Cal.2d 160, 168; *People* v. *Brubaker,* 53 Cal.2d 37, 48 [346 P.2d 8] ; *People* v. *Carter,* 48 Cal.2d 737, 751 [312 P.2d 665].) Defendant argues that these pictures are more horrible and gruesome than those held inadmissible in *People* v. *Redston,* 139 Cal.App.2d 485, 490-491 [293 P.2d 880], and *People* v. *Burns,* 109 Cal.App.2d 524, 541-542 [241 P.2d 308, 242 P.2d 9], where the deceased was shown with a shaved head and disfigured by an autopsy. However, in weighing the advantage of clarity and the necessity for pinpointing the character of the child's injuries as not the result of a series of general accidents as testified by defendant, as against the possibility of arousing any emotional disturbance on the part of the jury, we cannot say that the trial court abused its discretion in admitting them.

During the course of the trial the district attorney released to the press copies of the confessions and admissions of defendant before they were admitted into evidence by the court, and even before they had been made available to defendant and his counsel. The obvious impropriety of this conduct is only emphasized by the fact that we have now determined that these statements were inadmissible against defendant on the trial. Prosecuting officers owe a public duty of fairness to the accused as well as to the People and they should avoid the danger of prejudicing jurors and prospective jurors by giving material to news-disseminating agencies which may be inflammatory or improperly prejudicial to defendant's rights.

Other claims of error need not be discussed.

Judgment and order denying a new trial are reversed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and White, J., concurred.

Respondent's petition for a rehearing was denied October 17, 1961.