[Crim. No. 3464. Third Dist. Oct. 22, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. ERNEST AL
BOLES, Defendant and Appellant.

Henry J. Goff, Jr., under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris Maier, Assistant Attorney General, and Roger Venturi, Deputy Attorney General, for Plaintiff and Respondent.

SCHOTTKY, J.—Ernest Al Boles was convicted by a jury of the crime of receiving stolen property. He has appealed from the judgment which was entered and from the order of the court denying his motion for a new trial. The latter is now a nonappealable order. (Pen. Code, § 1237.)

The owner of a men's wear store in Red Bluff discovered on the morning of February 4, 1963, that during the weekend some merchandise had been taken from the store.

The defendant and three other young men had been in the store the previous Saturday afternoon. Two of the young men entered a plea of guilty to a charge of burglary and the third entered a plea of guilty to the crime of receiving stolen property.

Boles had been staying at a hotel in Red Bluff under the supervision of a parole officer of the California Youth Authority. The officer discovered a quantity of new clothing in the room of another parolee. Boles' room at the hotel was searched after he had checked out and a pair of jeans similar to those taken in the burglary was found under a blanket in the dresser drawer and also a sweater was hidden under the mattress. Boles was wearing a pair of jeans similar to those taken. At the police station Boles was questioned by Lt. Schoelen of the Red Bluff Police Department who testified that the statements given by Boles were free and voluntary, without promise of reward or threat of punishment. Boles denied at first any knowledge of the burglary. The officer told

Boles that he was going to get to the "bottom of this" and that he was going to book Boles for burglary.

The following appears in the testimony of Lt. Schoelen: "During this interview Mr. Boles denied anything about this. Later on he told me that he didn't commit this burglary. I said, 'Fine, if you didn't commit this burglary, I won't charge you with burglary.' ... Q. Let me ask the questions please, okay, so all the way through you told him from time to time that you were going to book him for burglary until you could check his story and get to the bottom of the thing? A. That is correct. ... Q. ... Well then, let me rephrase my question, did you at any time during the course of this conversation make a statement to him that if he told you what he knew about the burglary and it showed that he wasn't involved, that you would not charge him with burglary? A. That is correct, I told him if he wasn't involved in the burglary, I would not charge him with burglary. Q. And is it not a fact that this statement was made to him before he told you anything concerning the burglary or the stolen items? A. Yes, he kept telling me that he wasn't involved in the burglary. ... Q. After you made the statement to him about not charging him with burglary, did he then tell you or purport to tell you things involving the occurrence of the burglary and purporting to tell you what he knew about? A. I think this would be true."

Boles then admitted to the police officer that he had first seen the stolen articles when the two young men who committed the burglary knocked on his door about 10 p.m. and asked if they could put the articles in his hotel room. Boles said, "No." Later he went to another room in the hotel where the burglars were and saw clothing scattered all over. He knew the articles were stolen. Boles accepted a pair of trousers. In a second conversation with the police he reiterated the earlier statements and admitted wearing a pair of boots, and stated he had learned before he left the hotel room that all of the articles had come from the clothing store.

Boles testified that he had completed about one year of high school. He denied participation in the burglary. He said he got the trousers on the morning of the day he checked out of the hotel. He testified that the trousers were lying on the floor of his room and he just slipped them on. Boles testified that when he made the statement to the police officer he was under the impression he would not be charged with a crime if he did make the statement.

458

Appellant's major contention is that the court committed prejudicial error in admitting appellant's confession. Appellant argues that the confession was involuntary since it was induced by a promise of benefit by a police officer to the appellant, and the presumption of such improper influence continues to act through subsequent conversations. We have concluded that this contention must be sustained.

■ As stated in *People* v. *Brommel,* 56 Cal.2d 629, 632 [15 Cal.Rptr. 909, 364 P.2d 845] : ''. . . The cases in this court are clear from the earliest time that any promise made by an officer or person in authority, express or clearly implied, of leniency or advantage for the accused, if it is a motivating cause of the confession, is sufficient to invalidate the confession and to make it involuntary and inadmissible as a matter of law. (*People* v. *Johnson,* 41 Cal. 452, 454, 'if they would come in and confess that it would be lighter with them'; *People* v. *Barric,* 49 Cal. 342, 344-345, 'it would be better for him to make a full disclosure'; (*People* v. *Thompson,* 84 Cal. 598, 605-606 [24 P. 384], 'it would be better for him to tell what he knew'; *People* v. *Gonzales,* 136 Cal. 666, 668 [69 P. 487], 'the sheriff would do whatever he could for him, and ... ''that he had better come out and tell the truth'' '; see also *People* v. *Loper,* 159 Cal. 6, 15-18 [112 P. 720, Ann. Cas. 1912B 1193] ; *People* v. *Leavitt,* 100 Cal. App. 93, 94-95 [279 P. 1056].) ''

■ And as stated in *People* v. *Trout,* 54 Cal.2d 576, 583 [6 Cal.Rptr. 759, 354 P.2d 231, 80 A.L.R.2d 1418] : ''Before a confession may be used against a defendant the prosecution has the burden of showing that it was voluntary and was not the result of any form of compulsion or promise of reward, and it is immaterial whether the pressure or inducement was physical or mental and whether it was express or implied. (*People* v. *Berve,* 51 Cal.2d 286, 290-291 [332 P.2d 97] [Citations.].) The use in a criminal prosecution of involuntary confessions constitutes a denial of due process of law under both the federal and state Constitutions. [Citations.]

■ ''It is the duty of a reviewing court to examine the uncontradicted facts in order to determine independently whether a confession was voluntary. [Citations.] ''

In *People* v. *Brown,* 198 Cal.App.2d 253, 259 [17 Cal.Rptr. 884], the statement of a polygraph operator testified to by the defendant without contradiction that, ''I could submit to this, and everything would be fine. See, I *wouldn't get charged with it,* or anything. All they wanted to do was clear

it up.'' The court held the statement to be one of leniency and therefore the confession was inadmissible.

In *People* v. *Williams*, 133 Cal. 165 [65 P. 323], an admission or confession by silence of the accused was held to have been improperly received. The court said at page 167: ''. . . The brothers Tomlinson had told him, as one of them testified, that if he would make a statement exonerating their sister, he would be allowed to leave the city; and it appears the magistrate was called in, and after he had heard the statement, advised him to leave town. What was meant by exonerating their sister, after she had stated what had been done to her, was, probably, that he should admit the truth of her statement, and perhaps admit that he had used force. Nothing inculpatory was said by the defendant at the time. It made against him only because he was silent. Under such circumstances his silence did not imply an admission, but granting that it did, the admission was not voluntary. He was under restraint, and had a suggested promise that he could go free if he admitted his guilt, and a threat of prosecution if he defended himself and declared his innocence. The evidence should not have been admitted.''

 We cannot escape the conclusion that the statement made by the police officer to appellant before appellant made the so-called confession was an implied promise of leniency. We cannot accept respondent's contention that appellant was aware that the officer was merely promising leniency for the burglary. Boles was about 19 years of age and a parolee from the California Youth Authority. He had one prior conviction for burglary. We do not believe that it can reasonably be concluded that he would not believe that he would go free if he confessed. We believe that as a matter of law this was an involuntary confession. Therefore, the judgment must be reversed, since where an involuntary confession constitutes part of the evidence before the jury and a general verdict is returned, a judgment of conviction cannot stand even though there is sufficient evidence of guilt apart from the confession. (*People* v. *Trout, supra,* p. 585.) The fact that there was a second confession later the same day would not change the result because there was no showing that the inducement did not continue to act upon the defendant. There is a presumption that the improper influence continues to act and that the subsequent confession was the result of the same influence and likewise involuntary. (*Peo-*

*ple* v. *Brommel, supra,* p. 634.) There was no showing contrary to the presumption.

No other points raised require discussion.

The attempted appeal from the order denying defendant's motion for new trial is dismissed. The judgment is reversed.

Pierce. P. J., and Friedman, J., concurred.