[Crim. No. 3524.   Third Dist.   Sept. 1, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. LAWRENCE C. HONABLE, Defendant and Appellant.

Willard Weddell, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, and Doris H. Maier, Assistant Attorney General, for Plaintiff and Respondent.

SCHOTTKY, J.—Lawrence C. Honable and two codefendants were convicted by a jury of burglary in the second degree. (Pen. Code, §§ 459, 460.) Honable alone has appealed from the judgment.

It appears from the record that on June 21, 1963, Officer Stevens of the Ripon Police Department at about 12:40 a. m., while driving down an alleyway in the business district, noticed that the back door of Baron's TV store was ajar and that part of the door paneling was broken. He parked his vehicle and went to investigate. As he neared the store he heard a loud crash, and as he was about to enter the shop he got a glimpse of two Negro men running down the hall. He ordered them to stop but they did not. As he entered the rear door he heard the "front glass crash out." The officer fired at the man who was going out the shattered glass door but missed. The officer ran out the front door. He saw one of the men turn the corner at the intersection of Main and Walnut Streets on his right—to go north on Walnut Street. Again he fired a shot. The officer knew that Walnut Street was a cul-de-sac one block to the north so he ran to his car and drove to the intersection of Locust and Main, one block west of Walnut and Main, so he could observe anyone who would come across Locust or out of Walnut Street. He saw a 1955 Pontiac come out of Walnut Street and continue south. The officer pursued the vehicle but when he made his turn to go south on Walnut Street he did not observe any vehicle ahead of him so he turned left into an alley. As he entered the end of the alley he saw the car he had previously observed and stopped it. It contained three men, including appellant Honable who was bleeding from a slight cut on his forehead and from a bad wound on his left thigh. There was no blood on the car seat. Honable told the officer,

"I'm bleeding bad." The physician who treated Honable stated he had an incised cut with a jagged end 2½ inches long on his thigh which required suturing. The cut could have been caused by a sharp piece of glass or numerous things. Blood samples taken from a fragment of broken glass found about three feet from the shattered glass door were of the same type "O" as those from Honable's bloodsoaked trousers. Drops of blood were noticed from the front of the shop on Main Street leading toward Walnut Street.

Later in the evening three portable television sets which had been removed from the television store were found on Walnut Street alongside the route the suspects fled. A transistor radio which was also missing was never recovered.

There was evidence that latent fingerprints were taken from the sets but the results, if any, were not disclosed.

Lieutenant Billingsley of the Richmond Police Department and another Richmond officer, who were investigating some crimes which had been committed in Contra Costa County, came to San Joaquin County and talked to the defendants at the "French Camp Jail facilities" on July 1, 1963, the day the information was filed. They talked to them about the Ripon burglary and a criminal matter not connected with the Ripon case. The defendants were told if they talked about the latter they would not be prosecuted for anything in relation to those crimes. During the conversation the other officer said to Honable, "I understand that Ripon policeman almost mowed you down." The officer testified: "He looked under the table and he asked us, 'Is this room bugged?' and Lt. Billingsley told him, 'No, not to my knowledge.' Then he kind of looked up and kind of grinned and he said, 'Man, he missed me about that far.' . . ."

All of this testimony as to the officer's conversation with defendants was admitted over appellant's objection that it was improper for appellant to be interviewed without his counsel being present.

All of the defendants denied the crime. Honable testified that he received the cuts in a fight in Modesto shortly before the arrest; that they had pursued their assailants to Ripon where they lost them. The defendants testified that Lieutenant Billingsley offered them $1,000 to testify against a receiver of stolen property, and that he also implied that they would be leniently treated if they agreed. The officers denied these statements of the defendants.

▮ Appellant's first contention is that the evidence was in-

sufficient to identify him as a participant in the crime. This contention cannot be sustained. We think the evidence was sufficient to support the implied finding of the jury. The apprehension of appellant Honable a few minutes after the burglary and the fact that blood from bloodstained glass found at the scene of the crime matched blood taken from his blood-soaked trousers would permit an inference that he was one of the men who were the burglars.

Appellant contends further that the evidence is insufficient because the prosecution did not introduce in evidence the results of the latent fingerprint tests or possession of the transistor radio by appellant. Appellant contends that further blood classification should have been made and his clothing examined microscopically for glass particles.

In *People* v. *Tuthill,* 31 Cal.2d 92, the court stated at pages 97-98 [187 P.2d 16] : ''The defendant argues that an examination of the gun barrel might have disclosed the fingerprints of the deceased and support the theory of an accidental killing; that a paraffin test of defendant's hands within a few hours after the shooting might have determined whether he shot the gun; that proof of the presence or absence of powder marks on the head of the victim might have helped the defense; and that various other witnesses might have been produced by the prosecution and other tests might have been applied.

''There is no compulsion on the prosecution to call any particular witness or to make any particular tests so long as there is fairly presented to the court the material evidence bearing upon the charge for which the defendant is on trial. (*People* v. *Larrios,* 220 Cal. 236, 251 [30 P.2d 404] ; *People* v. *Simpson,* 66 Cal.App.2d 319, 329 [152 P.2d 339].)

While the intentional suppression of material evidence by the prosecution would be a denial of due process (*People* v. *Kiihoa,* 53 Cal.2d 748 [3 Cal.Rptr. 1, 349 P.2d 673]), there is no showing of suppression here. Further blood tests were not taken because there was insufficient blood on the fragment of glass to take them. The failure to describe the results of the latent fingerprint tests may have been because the prints may not have been those of any of the accused. The radio was never found. But this does not show intentional suppression of evidence. It merely discloses gaps in the state's chain of evidence which was for the jury to consider in determining the verdict. The question of the sufficiency of the evidence was one for the jury.

■   The most serious contention of appellant, and one which we have concluded requires a reversal of the judgment, is appellant's contention that the admission made by him during the interview with the police officers was erroneously admitted in evidence because it was induced by promises of leniency and because he was not represented by counsel during the interview.   Respondent in reply contends that the appellant's admission was entirely voluntary in nature since he did not request the aid of counsel, that his admission was not induced by promises of leniency, and that such promises of leniency were not relied upon by him.

As stated in *People* v. *Brommel,* 56 Cal.2d 629, at page 632 [15 Cal.Rptr. 909, 364 P.2d 845] : ". . . The cases in this court are clear from the earliest time that any promise made by an officer or person in authority, express or clearly implied, of leniency or advantage for the accused, if it is a motivating cause of the confession, is sufficient to invalidate the confession and to make it involuntary and inadmissible as a matter of law.   (*People* v. *Johnson,* 41 Cal. 452, 454, 'if they would come in and confess that it would be lighter with them'; *People* v. *Barric,* 49 Cal. 342, 344-345, 'it would be better for him to make a full disclosure'; *People* v. *Thompson,* 84 Cal. 598, 605-606 [24 P. 384], 'it would be better for him to tell what he knew'; *People* v. *Gonzales,* 136 Cal. 666, 668 [69 P. 487], 'the sheriff would do whatever he could for him, and . . . "that he had better come out and tell the truth" '; see also *People* v. *Loper,* 159 Cal. 6, 15-18 [112 P. 720, Ann.Cas. 1912B 1193] ; *People* v. *Leavitt,* 100 Cal.App. 93, 94-95 [279 P. 1056].)''

And as stated in *People* v. *Trout,* 54 Cal.2d 576, at page 583 [6 Cal.Rptr. 759, 354 P.2d 231, 80 A.L.R.2d 1418] : ''Before a confession may be used against a defendant the prosecution has the burden of showing that it was voluntary and was not the result of any form of compulsion or promise of reward, and it is immaterial whether the pressure or inducement was physical or mental and whether it was express or implied.   (*People* v. *Berve,* 51 Cal.2d 286, 290-291 [332 P.2d 97] ; . . .)   The use in a criminal prosecution of involuntary confessions constitutes a denial of due process of law under both the federal and state Constitutions.   [Citations.]'' (See *People* v. *Sigal,* 221 Cal.App.2d 684 [34 Cal.Rptr. 767].)

Respondent argues that the admission of appellant was not the result of any promise of leniency; that the promise of leniency did not go to the Ripon crime with which defendants

were charged; that the officers did not tell the accused that they could do anything for them so far as the Ripon crime was concerned; that the promise of leniency only concerned the Contra Costa crimes; and that appellant blurted out his admission without thinking of its import.

We are unable to agree with these contentions of respondent. Appellant and the other defendants were in the county jail. They had been held to answer after the holding of a preliminary examination. The officers from Richmond took them into a small room and proceeded to question them. The officers gained their confidence by assuring them that if they talked they would not be prosecuted for anything relating to the Contra Costa crimes. It is clear that the Contra Costa officers had been informed of the details of the Ripon crime. During the questioning one of the officers asked appellant: "I understand that Ripon policeman almost mowed you down?" In response, appellant after looking under the table and asking if the room were "bugged," replied with the admission that was admitted in evidence: "Man, he missed me about that far."

We cannot escape the conclusion that except for the promises made by the officers the admission of appellant would not have been made. In *People* v. *Boles,* 221 Cal.App.2d 455 [34 Cal.Rptr. 528], this court held that in a prosecution for the crime of receiving stolen property a promise to the defendant to the effect that if defendant told what he knew about the burglary, and if he were not involved in the burglary, he would not be charged with burglary constituted an implied promise of leniency. Defendant's subsequent statement concerning the occurrence of the burglary was held to be an involuntary confession as a matter of law and the trial court's admission of such confession in evidence was prejudicial error.

In the very recent case of *People* v. *Quinn,* 61 Cal.2d 551 [39 Cal.Rptr. 393, 393 P.2d 795], a San Francisco probation officer testified over objection that defendant had previously been arraigned on the same three charges and had pleaded guilty to robbery. The officer also testified, again over objection, that immediately after the guilty plea he interviewed defendant in preparing a presentence probation report and that defendant admitted that his motive for the robbery had been to get narcotics, that he had used a "phony" gun, and that he had stolen the automobile used in the robbery. The

probation officer testified that he always tells convicted defendants interviewed in preparing probation reports that "if they are not telling us the truth, then we most certainly would not recommend probation for them." In reversing the judgment of conviction, our Supreme Court, speaking through Mr. Justice Traynor, said at page 554:

"Defendant contends that his admissions to the probation officer were involuntary. A confession or admission induced by promises of leniency or by threats is involuntary and therefore inadmissible. (*People* v. *Underwood, ante,* [61 Cal. 2d] pp. 113, 120-121 [37 Cal.Rptr. 313, 389 P.2d 937] ; *People* v. *Brommel,* 56 Cal.2d 629, 632-634 [15 Cal.Rptr. 909, 364 P.2d 845] ; *People* v. *Trout,* 54 Cal.2d 576, 583 [6 Cal.Rptr. 759, 354 P.2d 231, 80 A.L.R.2d 1418] ; *People* v. *Rogers,* 22 Cal.2d 787, 805 [141 P.2d 722] ; cf. *Haynes* v. *Washington,* 373 U.S. 503, 513 [83 S.Ct. 1336, 10 L.Ed.2d 513, 520-521] ; *Lynumm* v. *Illinois,* 372 U.S. 528, 534 [83 S.Ct. 917, 9 L.Ed.2d 922, 926] ; *Leyra* v. *Denno,* 347 U.S. 556, 560 [74 S.Ct. 716, 98 L.Ed. 948, 952].) The probation officer, who was to make a report and a recommendation to the trial judge before sentencing, told defendant that he would not recommend probation if defendant failed to tell the truth. Defendant's admissions following this threat or implied promise of leniency were therefore involuntary, and their introduction into evidence requires reversal. (*People* v. *Brommel, supra,* 56 Cal.2d 629, 634; *People* v. *Trout, supra,* 54 Cal.2d 576, 585.)"

In view of the foregoing authorities we are convinced that it was error for the court to admit in evidence the admission of appellant in the instant case, and we are convinced also that the error was prejudicial and requires a reversal of the judgment.

The judgment is reversed.

Pierce, P. J., and Friedman, J., concurred.