[Crim. No. 3771. Third Dist. Dec. 14, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. MARSHALL
EDWARD PADDEN et al., Defendants and Appellants.

Joseph DeCristoforo, under appointment by the District Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Doris Maier, Assistant Attorney General, and Roger E. Venturi, Deputy Attorney General, for Plaintiff and Respondent.

PIERCE, P. J.—The appeal is by both defendants, Marshall Edward Padden and Amil Lewis Gray, from a verdict and judgment convicting defendants of burglary in the second degree. Defendants when charged first entered pleas of guilty. After the report of the probation officer had been received, they requested, and were granted, permission to withdraw the guilty pleas and enter pleas of not guilty. At the first trial the jury disagreed. A second trial resulted in the convictions appealed from.

Contentions on appeal are: (1) That substantial competent evidence relevant to prove defendants' confessions were involuntary was excluded; and (2) that the prior guilty pleas of both defendants were improperly admitted into evidence. Both contentions are sound: the first because the evidence rejected as hearsay was not inadmissible hearsay; the second because it is the settled law of California that evidence of prior guilty pleas is improperly admitted. (*People* v. *Quinn,* 61 Cal.2d 551, 555 [39 Cal.Rptr. 393, 393 P.2d 705].) The error was prejudicial.

*Re: The Contention that Evidence of a Possibly Coerced Confession was Improperly Excluded.*

A service station on U.S. Highway 40 near Davis, Yolo County, closed for the night, was burglarized between midnight and 6 a.m. of February 27, 1964. Entrance had been made by the burglars by prying up strips of sheet metal roofing. Efforts to open a safe had been unsuccessful but vending machine coin boxes had been pried open. A crowbar was found nearby the next day. No fingerprints were discovered.

In May and June 1964 defendants were "doing time" in a Sacramento County Honor Camp at Elk Grove for another burglary. At the trial in the present action Lieutenant Gorman of the Yolo County sheriff's office was a prosecution witness. He testified to a conversation in which, while defendants were so incarcerated, both confessed to the burglarizing of the Yolo County service station on February 27, 1964. Before this testimony was received a *voir dire* examination was conducted outside the jury's presence. During this examination it was learned that the Yolo County authorities had received information of defendants' asserted perpetration of the Yolo County burglary through Detective Jones of the Sacramento County sheriff's office. Detective Jones was not produced as a witness. Instead, Lieutenant Gorman was called. In addition to testifying to the confessions to him, he read a teletype from the Sacramento County sheriff's office which included the following statement: "Placing hold on Amil Lewis Gray . . . and Marshall Edwin Padden . . . Subjects doing time Sacramento County Jail for service station burglaries here. Admit your burglary Standard Station Highway 40 by Mace Road Roof entry 2-27-64 State took approximately $70.00 from vending machines Through [*sic*] crowbar into field subjects cooperative. . . ." Gorman also testified he had talked with Detective Jones on many occasions and that Jones had told him the defendants had confessed and wanted to talk to him, Gorman. He said he had not asked Jones whether defendants had been advised of their constitutional rights. No objection was interposed by defense counsel to the introduction of any of this testimony. Gorman later testified in detail (before the court) to the statements made by the defendants to him, Gorman, in Sacramento. It was shown that before their statements were given both were advised of their right to have the services of an attorney. With reference to the conversation with Gray, the following appears: "Q. Did you tell him he had the right to remain silent? A. I didn't use that word; that phraseology. I told him whatever he would tell me, or whatever he would say could be used against him, and also that he was entitled to an attorney. . . ."

Asked about what he had told Padden when the latter came in Gorman testified: "Q. And then you stopped, and advised Mr. Padden of his Constitutional rights? A. I advised him the same thing I advised Mr. Gray of."

Elsewhere in his testimony Gorman gave a slightly differ-

ent version of his definition of an accused's "constitutional rights." He said, "A man's constitutional rights is that he doesn't have to say anything, he can have an attorney. . . ."

■ Upon the conclusion of the *voir dire* examination of Lieutenant Gorman, defendant Gray was put on the witness stand by his own counsel for *voir dire* purposes only. At the outset he was asked this question: "Q. I want to call your attention to any conversation that you had with Officer Jones in Sacramento regarding any promises made to you. Would you tell his honor any conversations you had with Officer Jones as to any promises made to you if you would confess,— MURRAY: [prosecuting attorney] : Your Honor— THE COURT: Let him finish his question. BEEDE: [defense attorney] — if you would confess to various and sundry burglaries that occurred in Sacramento?" Objection was made upon the ground that the question called for hearsay. The objection was argued both by the district attorney and by defense counsel. The court ruled it was hearsay, sustained the objection and excluded the testimony.

Concerning this ruling, the Attorney General argues that defense counsel acquiesced in it. It is true that at one point defendants' attorney did state, "I appreciate that this question is hearsay," but then the attorney pointed out that Lieutenant Gorman had already testified to several talks he had had with Detective Jones. He then made the following offer to prove "That Officer Jones, through various stories regarding confessions, playing one against the other, and these boys were not advised of any rights they may have, and promises were made to them regarding if they would confess that all of these burglaries—that, in the case of Mr. Gray, he was in for violation of probation, and they told him he would get one month—rounding it out at six months if they would confess. They had evidence on them they had committed in excess of twenty burglaries and they would get six months and the slate wiped clean over in Sacramento. That would be the basis of it." ■ Since it is well settled that a confession motivated by a promise of leniency or advantage to the accused by an officer or person in authority is involuntary (*People* v. *Brommel,* 56 Cal.2d 629, 632 [15 Cal.Rptr. 909, 364 P.2d 845]), it is obvious that any competent evidence offered by defendants that such promises were made should have been received.

 The court's ruling rejecting this evidence was not vacated. Gray then testified to inducements made by Gorman to get them to confess. Thereafter Gorman testified in detail to full confessions by both defendants. The court ruled there was no showing as a matter of law of coercion, the jury was called in, and the evidence of the confessions stated above (omitting the testimony regarding Detective Jones' declarations)[1] was then repeated by Gorman before the jury.

The ruling of the court rejecting Gray's testimony regarding Jones' promises to him was error. It was not inadmissible hearsay. The error was compounded by the fact the court had already listened to Gorman's testimony that Jones had told him that defendants had given full confessions. This evidence was inadmissible. The prosecution had offered no evidence whatever that Jones, the officer first to interrogate defendants, had advised them of their constitutional rights. The evidence that Gorman had so advised them of their ''constitutional rights'' *after* the defendants had already confessed to Jones would seem to have no probative value to convince a court that Jones had been innocent of coercion.

 ''[B]efore a confession is admitted there must be evidence from which it is possible to determine that the confession was voluntarily made.'' (*People* v. *Jones,* 24 Cal.2d 601, 608 [150 P.2d 801].) Here there was no evidence that the confession to Jones (heard by the court but not by the jury) was voluntary. (It should be noted, however, in fairness to the trial court that when the prosecution offered the self-serving hearsay of defendants' confessions to Jones, as testified to by Gorman, there was no objection. It is a general rule that inadmissible hearsay received without objection will support a judgment.[2] (See Witkin, Cal. Evidence (1958) § 723, subd. (1), p. 751.))

---

[1]Nonresponsive to any direct question, Gorman did include in an answer to a general question: ''I received several phone calls from Lt. Jones requesting me to go over and talk to these two boys, as they had admitted to him the commission of a burglary.'' On objection the answer was stricken and the jury was admonished to disregard the statement.

[2]This rule has been said to have limitations, i.e., sometimes evidence may be insufficient despite a failure to object. (Witkin, Cal. Evidence (1958) § 724, p. 752.) Witkin has stated (*op. cit.*, pp. 752-753): ''There are several limitations, not too clearly defined, . . .'' Evidence involving undue prejudice (*op. cit.*, § 717, p. 746) and involuntary confessions (*op. cit.*, § 252, p. 286) are mentioned. We find it unnecessary to determine in this case whether the failure of defense counsel to object gave the hearsay admitted here probative value.

■ Whatever the effect of the improper receipt in evidence of the confession to Jones may have been, the rejection of defendants' offer to prove through defendant Gray that Jones had made promises to induce the confessions was certainly prejudicial error. ■ First and fundamentally, it must be emphasized that it is not only the obligation of the state when a confession is offered to lay a foundation for its introduction by preliminary proof that it was freely and voluntarily made (see *People* v. *Underwood,* 61 Cal.2d 113, 121 [37 Cal.Rptr. 313, 389 P.2d 937]) but it is also necessary to allow the defendant an opportunity to introduce evidence to overcome the prima facie showing. (*People* v. *Gonzales,* 24 Cal.2d 870, 876 [151 P.2d 251].) It is stated in *Jackson* v. *Denno,* 378 U.S. 368, 376-377 [84 S.Ct. 1774, 12 L.Ed.2d 908, at pages 915-916, 1 A.L.R.3d 1205, 1213] : ". . . Equally clear is the defendant's constitutional right at some stage of the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession." ■ Thus, defendant Gray here was entitled to be heard on his claim that although he had confessed there had been a preceding softening-up process by the inducements of Detective Jones. As stated above, the evidence he had offered was not inadmissible hearsay. (1) It was admissible to prove the mental state of defendants when they made their confessions; (2) it was admissible to prove a fact in dispute—a vital part of "the transaction." (Perhaps (1) and (2) add up to the same thing.)

Regarding the first of these grounds, it is said in *People* v. *Marsh,* 58 Cal.2d 732, 737 [26 Cal.Rptr. 300, 376 P.2d 300] : "The gist of hearsay is that it is an out-of-court utterance offered to prove the truth of what is asserted in the utterance." But the court goes on to point out that where the evidence is offered not to prove the truth of the statements but to show the mental state of the defendants, i.e., that they believed what was told them, conversations offered for such purpose are not hearsay and are admissible. The *Marsh* opinion also states (on p. 737) : "McCormick, Evidence (1954) states the proper rule as follows, at pages 464-465 : 'When it is proved that D made a statement to X, with the purpose of showing . . . the information which X had as bearing on the reasonableness or good faith of the subsequent conduct of X, the evidence is not subject to attack as hear-

say.' Wigmore says, 'Wherever an utterance is offered to evidence the *state of mind* which ensued *in another person* in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the Hearsay rule is concerned.' (6 Wigmore, Evidence (3d ed. 1940) p. 235. . . .)'' Here there was neither claim nor issue that any promise made by Jones was binding or truthful. What the defense was trying to establish was that the promise had been made and that defendants, believing Jones, had experienced a state of mind inducing them to confess. Thus, the evidence offered by defendants was not to prove the truth of Jones' statements but to show the mental state these statements produced in defendants.

Secondly, the evidence was also admissible to prove a fact in dispute. In *People* v. *Dalton,* 172 Cal.App.2d 15, 20 [341 P.2d 793], it is held (quoting from the Code of Civ. Proc., § 1850): '' 'Where . . . the declaration, act, or omission *forms part of a transaction, which is itself the fact in dispute,* or evidence of that fact, such declaration, act, or omission is evidence, as part of the transaction.' '' (See also Code Civ. Proc., § 1870, subd. 1; *People* v. *Rosson,* 202 Cal. App.2d 480, 486 [20 Cal.Rptr. 833].)

The rejection of the offered evidence was error, and since its effect was to withhold both from the court and the jury substantial evidence that defendants' confessions were coerced it was prejudicial.

Two confessions are involved, only one of which was heard by the jury. Both, however, were heard by the court which has the responsibility in the first instance of making a determination whether coercion existed. (*People* v. *Gonzales, supra,* 24 Cal.2d 876.) ▮ A coerced confession is prejudicial as a matter of law. (*People* v. *Brommel, supra,* 56 Cal.2d 632; *People* v. *Parham,* 60 Cal.2d 378, 385 [33 Cal. Rptr. 497, 384 P.2d 1001].) The judgment must be reversed for this reason alone.

▮ It must also be reversed because, even if we were to assume the adequacy of the warning given by Gorman as to the second confession, the first confession—if coerced—would devitalize the second. Forbidden inducements to make an original confession do not always make later confessions inadmissible. But as stated in *Lyons* v. *Oklahoma,* 322 U.S. 596, 603 [64 S.Ct. 1208, 88 L.Ed. 1481, 1486]: ''. . . The effect of earlier abuse may be so clear as to forbid any other inference

that it dominated the mind of the accused to such an extent that the later confession is involuntary." This has recently been held by our Supreme Court in *People* v. *Bilderbach,* 62 Cal.2d 757, 763-765 [44 Cal.Rptr. 313, 401 P.2d 921], where a confession was the product of an illegal entry and search. (See also *Wong Sun* v. *United States* (1963) 371 U.S. 471, 485-486 [83 S.Ct. 407, 9 L.Ed.2d 441] (discussed by Justice Tobriner in the *Bilderbach* case).) The rule has been stated with perhaps greater emphasis by our own Supreme Court in *People* v. *Brommel, supra,* 56 Cal.2d at page 634: ". . . The presumption is that the improper influence continues to act and that the subsequent confessions were the result of the same influence, and hence likewise involuntary and inadmissible. [Citation.]" If we assume, as we must on this record, that the promises claimed were actually made by Detective Jones, such would be the resulting situation here. The inducements for the first confession were clearly the proximate cause of the second.

Since the case at bench must be sent back for retrial, we also discuss the question whether the warning given by Lieutenant Gorman to defendants as a prelude to receipt of the second confession satisfied the conditions of *People* v. *Dorado,* 62 Cal.2d 338, 353-354 [42 Cal.Rptr. 169, 398 P.2d 361]. Gorman stated he had advised both defendants of their "constitutional rights." Asked to define what he meant by that he stated it included a right to have counsel assigned; also the right to be warned that what was said might be used against defendants at the trial. As to whether Gorman's warning had also included advice of the defendants' right to remain silent, his answers were contradictory. At one time he stated he had not so advised the defendants "in those words." In another place in the transcript he stated that he had known this was a part of an accused's "constitutional rights." (Since the *Dorado* decision (filed in January 1965) postdated the trial of this case (December 1964), the failure of the record to show compliance or noncompliance with the rule clearly is understandable.) The question on retrial can be resolved in the light of *Dorado* and subsequent decisions.

*Re: The Admitting of Evidence of Prior Guilty Pleas.*

██ Evidence of defendants' prior guilty pleas was brought before the jury in two ways, by the court reporter who reported the proceedings at which the pleas were made, by the testimony of the probation officer who testified the

defendants had admitted commission of the crime after the pleas had been made, these conversations having been in connection with his report later made. None of this evidence was admissible. (*People* v. *Quinn*, 61 Cal.2d 551, 555 [39 Cal. Rptr. 393, 393 P.2d 705].)

Other contentions of error are not likely to occur on the retrial of this case and are therefore not discussed.

The judgment is reversed.

Friedman, J., and Regan, J., concurred.