[Crim. No. 14873. Second Dist., Div. Two. Dec. 18, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. RUBEN GARCIA ALVAREZ, Defendant and Appellant.

Marguerite C. Geftakys, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Ronald M. George, Deputy Attorney General, for Plaintiff and Respondent.

NUTTER, J. pro tem.*—Defendant was found guilty of robbery in the second degree and not to be armed, after a trial

---

*Assigned by the Chairman of the Judicial Council.

by jury. He was sentenced to the state prison for the term prescribed by law. Appeal is from this judgment. The chief ground in support of the appeal is a contention that the admission into evidence of extrajudicial statements consisting of a confession and prior inconsistent statements of appellant and appellant's witness violated appellant's rights to confront and cross-examine the witnesses against him. In this connection it appears that appellant seeks to extend the holding of the court in *People* v. *Johnson,* 68 Cal.2d 646 [68 Cal.Rptr. 599, 441 P.2d 111], which held that section 1235 of the Evidence Code permitting prior inconsistent statements for the truth of the matter asserted was unconstitutional and violated the accused's right of confrontation.

If the testimony was admitted for impeachment purposes only, the *Johnson* rules could not apply to the case at bench. The court in *Johnson* was careful to point out at page 658: "The United States Supreme Court has squarely stated that extrajudicial statements of a witness, *while admissible for impeachment purposes,* 'certainly would not be admissible in any criminal case as substantive evidence. . . .'" (Italics added.) The court pointed out at page 660 that when prior inconsistent statements are introduced for their traditional purpose of impeaching a witness, this may have little effect on the guilt determining process. The court went on to state: "[T]he erroneous admission of such a statement as substantive evidence does not automatically deprive the defendant of a fair trial, and the conviction will be reversed only in those cases in which prejudice ensued."

In the case at bench, in the prosecution's case in chief, witnesses were the victim, a shopkeeper of a neighborhood market and a bystander who observed the robber get in the escape car and three police officers. One officer testified concerning his observations of the get-away car and his arrest of the defendant. Another officer testified he approached the get-away car and found appellant's companion (and witness) in the car. The controversial testimony involved the testimony of Sergeant Allender wherein the sergeant related his conversation with the defendant at the police station when he first denied and then later confessed to the robbery. Then on rebuttal after defendant and his witness denied the robbery but admitted being in the area, another officer testified concerning prior inconsistent statements of appellant and his witness Soldano made at the police station concerning their movements in the area.

Unlike the *Johnson* case, *supra,* where prior inconsistent statements of the prosecuting witnesses before the grand jury were the sole evidence to establish the acts leading to a conviction of incest, the evidence of guilt in this case is overwhelming. Here there was ample evidence of appellant's guilt afforded by (1) the testimony of the victim and her immediate identification of appellant, and (2) the identification of the escape vehicle by two witnesses and appellant's apprehension shortly after leaving it. A brief summary of the evidence is as follows:

Vi's Market was a small neighborhood market located near the intersection of Main and Olive in Baldwin Park. At approximately 3 p.m. on Sunday afternoon, February 19, 1967, Mrs. Dosa, an employee, had been at work only a few minutes when appellant arrived. He was wearing a yellow-gold long sleeved cardigan sweater or windbreaker made of wool or orlon, a white T-shirt and black pants. He purchased a coke and candy and left the store having stayed three or four minutes altogether. Approximately an hour later appellant returned and asked for shoe polish. As Mrs. Dosa replied, he moved behind a potato chip rack at the end of the counter and came around to the clerk's side. Appellant grabbed Mrs. Dosa's right arm just above the elbow, and she started to pull away from him screaming for the owner of the store, Mrs. Gilliam, who was outside the back door. With his right hand appellant swung up at Mrs. Dosa, who saw a sharp object extending one-quarter to one-half an inch beyond appellant's thumbnail.

Appellant either let go of Mrs. Dosa, or she broke away as he was trying to get to the cash register on the counter. Appellant hit a register key, and the cash drawer slid open as Mrs. Dosa ran out the back door screaming for the owner. Mrs. Dosa received a slight scratch just near her elbow and a bruise on her arm.

Although Mrs. Dosa did not prepare the cash drawer that day, she estimated that $70 to $75, including some ten dollar bills, were missing.

Mr. Homer Ferry, a bystander, testified that at approximately 4:15 p.m. on the afternoon of the robbery he was driving by Vi's Market when he saw a man run through the door and down the street 50 to 100 feet ahead of him to a light-colored Renault waiting three quarters of a block away in the driveway of the Frostee Freeze at the corner. The car, bearing license number JEN 992, drove away as soon as the man got in. The man was dark-haired and dark-skinned, possibly

Mexican, about 5 feet 7 inches or 5 feet 8 inches tall and weighing about 130 pounds. Ferry believed the man was wearing a light shirt and blue pants, and Ferry was unable to see anything in his hand or anyone chasing him. The man driving the car had broad shoulders or was wearing a coat.

Deputy Sheriff Freeland testified that at approximately 5:10 that afternoon he noticed a white Renault with license number JEN 992 parked a few feet into a driveway on Loma Street in El Monte. The license number had been transmitted to Freeland in a previous broadcast. As Deputy Freeland and his partner, Deputy William Hanna, drove past the vehicle at a distance of about 25 feet, they saw two male occupants but were unable to identify them. The deputies proceeded a block further, made a U-turn, and went past the location again. The Renault had been moved further into the driveway and the occupants could not be seen. The deputies drove down to the corner of Rush and Loma and called for unit assistance.

When the second unit arrived, the deputies drove back to the driveway and got out. Deputy Freeland went around to the rear of the house and saw appellant run and jump over the rear fence. Appellant was wearing a yellow or gold long sleeved sweater, a T-shirt, and dark pants. After a 75 to 100 yard chase, Deputy Freeland caught and arrested appellant. He found $78, consisting of 23 one dollar bills, 1 five dollar bill, and 5 ten dollar bills rolled up in appellant's right front pants pocket.

Deputy Hanna testified that when he approached the Renault and found Alcadio Soldano, the registered owner, lying prone in the back seat, he did not have any sum like $75 on his person.

That evening Mrs. Dosa identified appellant in a lineup at the Temple City sheriff's station.

Sergeant Allender testified that after appellant was warned of his constitutional rights at the sheriff's station, appellant related his activities prior to the arrest. Appellant told Sergeant Allender he had been in Baldwin Park with another friend, that they had been to the El Playboy Bar and drank beer, and that they had driven to South El Monte where he was arrested. Appellant denied any participation in the robbery at Vi's Market until he was advised that he had been identified in a lineup. He then stated that he had, in fact, gone to the grocery store across the street from the El Playboy Bar and used a screwdriver in the robbery, obtaining about $75. He said that he ran from the store to a Valiant

across the street and drove to South El Monte, where he was arrested. He also discussed with appellant the robbery of a dairy in South El Monte. He told appellant that he was concerned with some other robberies which he would like appellant to clear up and he may have told appellant that he would not be filing on him for the Baldwin Park robbery because it was out of his jurisdiction. Appellant did not object to or make any motion to strike Allender's testimony.

In his testimony at the trial appellant denied having been to Vi's Market on the date of the robbery or telling Sergeant Allender he had been at this market. He denied being in Baldwin Park on February 19.

On cross-examination, appellant was asked: ''Didn't you tell Officer Tipton that you had been at the El Playboy Bar at Main and Olive? A. Not—not inside; outside. Q. Did you not tell Officer Tipton that you had been at the El Playboy Bar? A. No, I didn't. Q. Did you not tell Officer Tipton that you had been there for two or three hours during the afternoon of February 19? A. No, I didn't. Q. Did you not tell Officer Tipton that you went out to your car, a 1960 Renault, and that you got into the car and that the defendant walked up to the car and asked you for a ride to El Monte? A. No, I didn't. Q. You didn't make that statement? A. No. Q. Did you not tell Officer Tipton that you had known Mr. Alvarez for about four years and that you agreed to give him a ride to the El Monte area? A. No, I didn't. Q. Did you not tell Officer Tipton that you let the defendant out of the vehicle and you were sick and that you went to sleep in the car? A. No, I didn't.''

In rebuttal, Officer Tipton testified that appellant stated that Soldano had picked him up in El Monte and that they went for a ride to Temple City where they bought an ice cream cone.

Appellant's witness Soldano testified that he had known appellant for 20 years. He said that appellant had called him at 4 p.m. and asked if he wanted to have a couple of beers. Soldano told him he had a date at 4:30 p.m. in South El Monte and that he would pick him up on his way. As Soldano was leaving his Baldwin Park home, his 9-year-old nephew asked to be taken to buy some hamburgers, so they drove to the Frostee Freeze on the corner of Main and Olive near Vi's Market. It was about 4:05 p.m. when they parked behind the Frostee Freeze, and Soldano was wearing a brown shirt, a jacket and green pants. By the time he had taken his nephew

home and driven to pick up appellant at his mother's house, it was close to 4:30 p.m. They went to the girl's house on Loma Street and a child came out and told them she would be right back. They were arrested while waiting for her.

On cross-examination Soldano testified that during the approximately eight minutes he stayed at the Frostee Freeze he did not see anyone run from Vi's Market or hear anyone scream. He did not know the address or phone number of the Loma Street house and knew nothing but the first name of the girl he was to pick up there. He had met her at the house the night before, but she did not live there.

Soldano testified that he was questioned by Officer Tipton on the day of his arrest, but he denied having admitted that he had been in the El Playboy Bar on the corner of Olive and Main for two or three hours that afternoon or that appellant had approached him as he left and asked for a ride to El Monte. He denied having told Officer Tipton that he had known appellant for about four years, that he had agreed to give him a ride to El Monte, or that he became sick and went to sleep in his car after letting appellant out. He also denied having moved his car once he parked in the driveway on Loma Street.

In his rebuttal testimony concerning Soldano, Officer Tipton testified that Soldano stated that he had just left the El Playboy Bar, where he had stayed two to three hours, and had entered his 1960 Renault when appellant came up and asked him for a ride to South El Monte. He stated that since he had known appellant for approximately four years he had given him the ride. He had let appellant out, parked in a driveway, and had gone to sleep because he was beginning to feel ill.

Appellant contends that admission of Soldano's prior inconsistent statements made to Officer Tipton violated appellant's right of confrontation.

 Even before enactment of the Evidence Code a witness' prior inconsistent statement could be used to discredit his testimony given at the trial. (*People* v. *Orcalles,* 32 Cal.2d 562, 572-573 [197 P.2d 26] ; *People* v. *Ballard,* 218 Cal.App.2d 295, 309 [32 Cal.Rptr. 233].) The case of *People* v. *Johnson, supra,* 68 Cal.2d 646, did not alter that rule. Although appellant suggests that the testimony was obviously offered for the truth of the matters stated, there is nothing in the record to support this assertion. The testimony and court colloquy was as follows :

"Q Did Mr. Soldano tell you where he had met Mr.

Alvarez? MR. BUBRICK: To which I will object as hearsay, your Honor. MR. NORMAN: It is offered for the purpose of impeachment. THE COURT: The objection is overruled. MR. BUBRICK: It is still hearsay. THE COURT: The objection is overruled. You may answer the question. THE WITNESS: Yes, sir. Q (BY MR. NORMAN) Did he tell you that he had met the defendant at the El Playboy Bar? MR. BUBRICK: Objection to that as leading and suggestive, your Honor. THE COURT: Try to avoid leading questions. Q (BY MR. NORMAN) Will you tell us the conversation that you had with Mr. Soldano? A Yes, sir. He stated that he had just left the El Playboy Bar at the corner of Main and Olive in Baldwin Park and walked to his vehicle which was a 1960 Renault; he had gotten into the vehicle and Mr. Alvarez had come up and asked him for a ride to the South El Monte area. He stated that as he had known Mr. Alvarez for approximately a four-year-period of time, he had given him the ride. Q Did he tell you how long he had been at the El Playboy? A Yes sir. He stated he had been in the El Playboy for approximately two to three hours. Q Before meeting Mr. Alvarez? A Before meeting Mr. Alvarez. Q Did he tell you whether they had gone any place else? A No, sir. He stated that they had driven to the South El Monte area and that he had let Mr. Alvarez out and as he was beginning to feel bad, he had driven up into a driveway and had parked and had gone to sleep in his vehicle.''

▪ Appellant alleges that the testimony of Sergeant Allender and Detective Tipton was offered for the truth of the matters asserted in the statements; he alleges he did not have the opportunity to cross-examine witnesses concerning these statements; and that he was denied the right to confront witnesses against him in violation of the United States Constitution, Amendment VI; California Penal Code section 686; he alleges that the testimony was a thrust at the very heart of appellant's alibi; it was offered not for the purpose of showing that the statements were in fact made but that appellant and Mr. Soldano were in the immediate vicinity of El Playboy Bar and Vi's Market at the time of the robbery and not in El Monte; the jury would consider these statements in arriving at their determination of guilt because 25 percent of the instructions related to statements of witnesses. Instructions concerning witnesses' testimony were: CALJIC 29 (Re-revised), Definition of Admission and Confession; CALJIC 29-D (Re-revised), Cautionary Instruction: Oral Admission

-or Confession; CALJIC 31 (Revised), Alibi; CALJIC 52 (1967 Revision), Credibility of Witness. *A statement previously made by him that is inconsistent with any part of his testimony*; CALJIC 52-A (New), Witness Wilfully False—Discrepancies in Testimony; CALJIC 53 (1967 Revision).

Sergeant Allender was the only witness to testify as to appellant's confession, and he was cross-examined by appellant's counsel.

Evidence Code section 1220 declares that evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party. As reported in the Law Revision Commission Comment the rationale of this exception to the hearsay rule is that the party's right to cross-examine the declarant is not violated since the party himself made the statement.

Since appellant's statement was made voluntarily in accordance with Evidence Code section 1204, the evidence was admissible. An oral confession may be proved by the testimony of anyone who was present and heard the declarations when they were made. (*People* v. *Fitzgerald,* 56 Cal.2d 855, 860 [17 Cal.Rptr. 129, 366 P.2d 481]; *People* v. *Luis,* 158 Cal. 185, 193 [110 P. 580].)

Appellant's other contention that the appellant's possible admission and confession was fraudulently elicited is without merit. Appellant contends that the police sergeant told him that the authorities would not file on him for a Baldwin Park robbery since it was out of their jurisdiction.

Appellant failed to object to the introduction of the statements at the trial. The general rule is that the admissibility of evidence will not be reviewed on appeal in the absence of proper objections at trial. (*People* v. *Hillery,* 62 Cal.2d 692, 711 [44 Cal.Rptr. 30, 401 P.2d 382]; *People* v. *Merkouris,* 46 Cal.2d 540, 558 [297 P.2d 999].)

No promise of immunity can fairly be implied here. Moreover, a promise of immunity must be expressed or clearly implied, and it must be the motivating cause of the confession. (*People* v. *Brommel,* 56 Cal.2d 629, 632 [15 Cal.Rptr. 909, 364 P.2d 845]; *People* v. *Boles,* 221 Cal.App.2d 455, 458 [34 Cal.Rptr. 528].)

Appellant also contends that he made no knowing and intelligent waiver of his constitutional rights although he concedes there was a stipulation that appellant and his companion were advised of their constitutional rights and the statements were

made freely and voluntarily. He has given no criteria in support of this argument. It is without merit.

The judgment is affirmed.

Roth, P. J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 13, 1969.